******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KIM THOMSON *v.* DEPARTMENT OF
SOCIAL SERVICES
(AC 38851)

Sheldon, Beach and Flynn, Js.

*Syllabus*

The plaintiff employee commenced an action against her employer, the
defendant Department of Social Services, alleging that the defendant
had violated the Connecticut Fair Employment Practices Act (§ 46a-51
et seq.) by discriminating against the plaintiff on the basis of her disability
as a result of the defendant's failure to provide her with a reasonable
accommodation. The plaintiff suffered from a severe chronic disease
that required her to periodically miss work. In January 2013, the plaintiff,
who was not eligible for federal family and medical leave, provided G,
one of the defendant's human resources representatives, with a medical
certificate from her physician that indicated that the plaintiff would
have to work on a reduced schedule, but the physician did not indicate
a date when she could return to work full-time. Approximately one week
later, the plaintiff left a note under G's door indicating that she would
be taking a medical leave lasting more than thirty days, depending on
her condition. The note listed the plaintiff's cell phone number and
home address, and stated that she could be contacted regarding any
questions. Thereafter, O, another human resources representative who
replaced G, sent a certified letter to the address listed in the plaintiff's
note, stating that she was ineligible for family and medical leave, that
she had not provided the documents necessary to support a medical
leave of absence, and that she was currently on unauthorized leave. The
letter stated that O had called the plaintiff's cell phone and left a voice-
mail message but that she had not received a response. The letter
provided that the plaintiff's absence would be deemed a resignation not
in good standing if she did not return to work or provide a medical
certificate to support her leave by a certain date. After that date had
passed, O sent the plaintiff a letter stating that she had "been resigned
not in good standing" because she had failed to return to work and
failed to provide a completed medical certificate. The trial court there-
after granted the defendant's motion for summary judgment, concluding
that the plaintiff failed to present evidence sufficient to support a prima
facie case of discrimination because she had not provided evidence
demonstrating that she was able to perform her job with or without a
reasonable accommodation, or that the defendant did not reasonably
accommodate her. From the summary judgment rendered thereon, the
plaintiff appealed to this court, claiming that the trial court had improp-
erly rendered summary judgment for the defendant because her request
for leave was a reasonable accommodation that would have enabled
her to perform the essential functions of her job. *Held* that the trial
court properly determined that the plaintiff could not meet her burden
of proving a prima facie case of disability discrimination because her
request for leave was not a reasonable accommodation, as the plaintiff
informed the defendant that she would be taking a leave of absence
but did not provide the defendant with any time frame for her return
and did not respond to the defendant's subsequent attempts to contact
her regarding her request for leave, and the defendant was not required
to wait indefinitely for the plaintiff's medical condition to be corrected;
moreover, the defendant was not given an opportunity to engage in the
required interactive process with the plaintiff regarding a reasonable
accommodation for her disability given that she had failed to follow
through with her own directions to the defendant as to how communica-
tions would occur.

Argued March 6—officially released September 5, 2017

*Procedural History*

Action to recover damages for alleged disability dis-
crimination, and for other relief, brought to the Superior

Court in the judicial district of Hartford, where the court, *Elgo*, *J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*James V. Sabatini*, for the appellant (plaintiff).

*Matthew F. Larock*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Ann E. Lynch*, assistant attorney general, for the appellee (defendant).

*Michael Roberts* filed a brief for the Commission on Human Rights and Opportunities as amicus curiae.

*Opinion*

BEACH, J. The plaintiff, Kim Thomson, appeals from the judgment of the trial court granting the motion for summary judgment filed by the defendant, the Department of Social Services. On appeal, the plaintiff contends that the court improperly held that insufficient facts were presented to support a prima facie case for disability discrimination. We affirm the judgment of the trial court.

The following facts, taken from the materials submitted in connection with the motion for summary judgment, are relevant to this appeal. The plaintiff was employed by the defendant as a clerical assistant from 1987 to 2013. She has suffered from severe chronic asthma since birth. Throughout her employment with the defendant, the plaintiff suffered occasional "flare-ups" of her condition. During these flare-ups, the plaintiff required rest for recovery and was unable to work. On several occasions the plaintiff arranged with her human resources representative, Kelly Geary, to take medical leave pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (2012) (FMLA). By October, 2012, however, the plaintiff was no longer eligible for FMLA leave because she had not worked the number of hours required to maintain eligibility. The plaintiff, Geary, and the plaintiff's supervisor, Louis Polzella, met to discuss how they could accommodate the plaintiff without using FMLA leave and determined that the plaintiff could use sick leave, personal leave, governor's leave, and unpaid leave when necessary to accommodate her disability.

On January 30, 2013, the plaintiff notified Geary that she would need to take intermittent leave as an accommodation for her disability. The plaintiff provided Geary with a medical certificate on which the plaintiff's physician indicated that she would need "to . . . work only intermittently or on a reduced schedule as a result of the condition," and would be unable to work for four days per month going forward. The form left space for the plaintiff's physician to indicate when she would be able to return to work full-time, but he drew a line through the space and did not fill in a date.

Early in 2013, Geary became responsible for supervising another unit, and Lisa Owens replaced Geary as the plaintiff's human resources representative. On January 31 of that year, Geary sent Owens a memo informing her that the plaintiff "[h]as had FMLA—fed intermittent for years" and that "last time she submitted," she did not have the hours required to take any additional FMLA leave. Geary also indicated that the plaintiff had mentioned that she may need to take leave soon and had requested the ability to use leave donated from a coworker, but that Geary "advised her she could not enact it until she was out on 'long term' illness of [more

than thirty] days."

Approximately one week later, on February 6, 2013, the plaintiff left a note under Geary's office door indicating that she would be taking a medical leave of absence beginning the next day, February 7, 2013, and lasting for "over thirty days depending on my lung condition as I need to get well and my lungs better." The plaintiff noted that she had not spoken with Polzella about taking a leave of absence. The plaintiff also provided her cell phone number and her home address, which she listed in bold type font, and asked Geary to contact her if she had any questions. The plaintiff otherwise did not speak with Geary about taking this leave of absence.

The plaintiff also left paperwork with Geary to make claims under two short-term disability insurance policies. The paperwork left space in several places for the plaintiff and her physician to indicate when she would be returning to work. On the paperwork for one policy, the plaintiff indicated that she would be unable to work from February 7, 2013, "[until] reevaluated." On the same form, the plaintiff's physician indicated that she would be unable to work from "2/7/13" to "ongoing," and that he expected "significant improvement in the [plaintiff's] medical condition" in one to two months. On the paperwork for her other policy, the plaintiff's physician indicated that she would be unable to work from "2/7/13" through "ongoing," and would be able to return to work "when reevaluated," but did not indicate when that reevaluation would occur. The plaintiff did not provide Geary with a medical certificate sufficient to support this request for leave. On February 7, 2013, Geary sent the plaintiff's note and paperwork to Owens.

On February 13, 2013, Owens mailed a certified letter to the plaintiff's home address notifying her that she was ineligible for FMLA leave, that she had not provided the documents necessary to support a medical leave of absence, that she was not eligible to use leave time donated by a coworker, and that she was currently on unauthorized leave. Owens also notified the plaintiff that she needed to contact her supervisor to request leave on a daily basis, and that, if she did not return to work or provide a medical certificate to support her leave by February 21, 2013, her absence "may be deemed a resignation not in good standing." (Internal quotation marks omitted.) Owens noted that she had called the plaintiff's cell phone number and left a voice-mail message on February 8, 2013, but had not received a call back. The plaintiff did not respond and did not return to work. On February 22, 2013, Owens sent the plaintiff a second letter via regular mail notifying her that she had "been resigned not in good standing" because she had failed to return to work and failed to provide a completed medical certificate on or before February 21, 2013.

The plaintiff did not receive either of these letters

until February 24, 2013, when she returned home from an approximately two week stay at her daughter's home in Hartford. The plaintiff had not been retrieving her mail from her home address while she was away. On February 25, the plaintiff began calling and leaving messages for Geary and Owens, asking whether the donated leave had been applied, requesting that the disability paperwork be completed, and seeking to "make sure that everything [is] going in the manner that it should be." On February 27, Owens spoke with the plaintiff on the phone and informed her that, per the letters sent to her home address, she had been deemed resigned not in good standing. On March 15, 2013, the plaintiff mailed a replica of her January 30, 2013 medical certificate to Owens with the additional notation: "[a]sked to stay off work 2/7/13 [until] improved." No action was taken on the basis of that certificate.

The plaintiff commenced an action alleging that the defendant had discriminated against her on the basis of her disability and had failed to provide her with a reasonable accommodation in violation of General Statutes § 46a-60 (a) (1), a provision of the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq. The defendant filed a motion for summary judgment arguing that the plaintiff had failed to present evidence sufficient to support a prima facie case of discrimination, and the trial court granted the defendant's motion. The court agreed and noted that "the plaintiff has not produced evidence demonstrating that she was able to perform her job with or without reasonable accommodation nor has she shown that the defendant did not reasonably accommodate [her]." This appeal followed.

We begin by setting forth the relevant standard of review and applicable legal principles. "A court shall render summary judgment if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 402–403, 944 A.2d 925 (2008).

"Our Supreme Court has determined that Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws. . . .

While certain elements of the Fair Employment Practices Act and the [Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (2012) (ADA)] differ, [c]laims for violations of the [Fair Employment Practices Act] are analyzed under the same standards as claims for violations of the ADA. . . . [D]iscrimination on [the] basis of [a] disability under [the] ADA includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. . . . Under the ADA, a qualified individual with a disability is one who is capable of performing the essential functions of the desired job with or without reasonable accommodation." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Langello* v. *West Haven Board of Education*, 142 Conn. App. 248, 259–60, 65 A.3d 1 (2013).

"In order to survive a motion for summary judgment on a reasonable accommodation claim, the plaintiff must [first establish a prima facie case of disability discrimination by] produc[ing] enough evidence for a reasonable jury to find that (1) [s]he is disabled within the meaning of the [statute], (2) [s]he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff's] disability, did not reasonably accommodate it." (Internal quotation marks omitted.) *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 415; see *McBride* v. *BIC Consumer Products Mfg. Co.*, 585 F.3d 92, 96–97 (2d Cir. 2009). "Once a disabled individual has suggested to his [or her] employer a reasonable accommodation . . . the employer and the employee engage in an informal, interactive process with the qualified individual with a disability in need of the accommodation . . . [to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. . . . In this effort, the employee must come forward with some suggestion of accommodation, and the employer must make a good faith effort to participate in that discussion." (Citation omitted; internal quotation marks omitted.) Id., 416.

"The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment . . . ." *McBride* v. *BIC Consumer Products Mfg. Co.*, supra, 583 F.3d 97. "To satisfy this burden, [the] [p]laintiff must establish both that [her] requested accommodation would enable [her] to perform the essential functions of [her] job and that it would allow [her] to do so at or around the time at which it is sought." (Internal quotation marks omitted.) *Nandori* v. *Bridgeport*, United States District Court,

Docket No. 3:12CV673 (JBA), 2014 WL 186430, *5 (D. Conn. January 16, 2014); see also *McBride* v. *BIC Consumer Products Mfg. Co.*, supra, 97–98 (plaintiff requesting reassignment as accommodation required to "demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which she could have been reassigned").

To satisfy the second element of her prima facie case, the plaintiff must show that the requested accommodation was reasonable and enabled her to function in the workplace. See *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 419 ("[i]n order to survive summary judgment on a reasonable accommodation claim, the plaintiff has the burden of showing that an accommodation would enable him [or her] to perform the functions of the job and that, 'at least on the face of things,' it is feasible for the employer to provide the accommodation"); see also *Graves* v. *Finch Pruyn & Co.*, 457 F.3d 181, 185 (2d Cir. 2006); *Nandori* v. *Bridgeport*, supra, 2014 WL 186430, *5–6. The plaintiff argues that her request for leave was a reasonable accommodation and would have enabled her to perform the essential functions of her job. The defendant contends that the plaintiff's request for leave was not reasonable, and, therefore, that she failed to prove that she was able to perform the essential functions of her job with a reasonable accommodation. We agree with the defendant.

We first note that a medical leave of absence is a recognized form of accommodation. See *Green* v. *Cellco Partnership*, 218 F. Supp. 3d 157, 164–65 (D. Conn. 2016); *Hutchinson* v. *Ecolab, Inc.*, United States District Court, Docket No. 3:09CV1848 (JBA), 2011 WL 4542957, *9 (D. Conn. September 28, 2011). Federal courts have held, however, that "[t]he duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover, nor does it force an employer to investigate every aspect of an employee's condition before terminating him [or her] based on [an] inability to work." *Parker* v. *Columbia Pictures Industries*, 204 F.3d 326, 338 (2d Cir. 2000); see also *Mitchell* v. *Washingtonville Central School District*, 190 F.3d 1, 9 (2d Cir. 1999) ("[n]or, especially in light of the . . . the absence of any indication from [the plaintiff] . . . [that] he expected to be able to return [to work], was the [defendant] required to grant [the plaintiff] an indefinite leave of absence"); *Nandori* v. *Bridgeport*, supra, 2014 WL 186430, *8 ("[p]laintiff's only identified accommodation was a request for indefinite injury leave, which, as a matter of law, does not constitute a reasonable accommodation").

Although not bound by it, "we review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes." *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 415.

We find persuasive the reasoning of the United States Court of Appeals for the Fourth Circuit in *Myers* v. *Hose*, 50 F.3d 278, 283 (4th Cir. 1995), that "reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question. . . . [R]easonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical conditions to be corrected . . . ." See also *Mitchell* v. *Washingtonville Central School District*, supra, 190 F.3d 9, citing *Myers*; *Rogers* v. *International Marine Terminals*, *Inc.*, 87 F.3d 755, 759–60 (5th Cir. 1996) (finding no merit in argument that indefinite leave was reasonable accommodation).

The plaintiff argues that she had requested a reasonable accommodation, thereby satisfying the second element of her prima facie case. We disagree. The plaintiff, prior to her departure, *informed* Geary that she would be taking leave for "*over thirty days* depending on my lung condition . . . ." (Emphasis added.) At a subsequent deposition, the plaintiff was asked, with respect to her request for leave, that "you didn't know how long you were going to be out, correct?" The plaintiff responded, "[c]orrect." One of the forms the plaintiff submitted on February 6, 2013, indicated that her physician expected "improvement" within "one to two months," and additionally stated, in at least three places, that the plaintiff would be absent "[until] reevaluated." The forms did not indicate when the plaintiff was expected to be reevaluated. Neither the plaintiff's note to Geary nor her short-term disability paperwork indicated when—or even whether—the plaintiff would be returning to work.

When the defendant attempted to obtain further information by contacting the plaintiff by certified and regular mail, the plaintiff did not respond. As the trial court noted, "the defendant's efforts to communicate with the plaintiff were stymied by the plaintiff's failure to follow through with her own directions to the defendant as to how communications would occur." The plaintiff did not attempt to contact the defendant until she had been absent from work for more than two weeks, despite the fact that her request for leave had never been approved. The defendant, then, was not given an opportunity to engage in the required interactive process with the plaintiff regarding a reasonable accommodation for her disability.[1]

The plaintiff informed the defendant that she would be taking a leave of absence, did not provide the defendant with any time frame for her return, and did not respond to the defendant's subsequent attempts to contact her regarding her request for leave. The plaintiff effectively asked the defendant "to hold [her] position open indefinitely while [she] attempt[ed] to recover . . . ." *Parker* v. *Columbia Pictures Industries*, supra,

204 F.3d 338. On the basis of the record before us, the plaintiff has failed to demonstrate that she requested a reasonable accommodation that enabled her to perform the essential functions of her job, and, therefore, the court properly determined that as a matter of law the plaintiff could not meet her burden of proving a prima facie case of disability discrimination.[2]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff argues that "[b]efore an employer should be able to rely on the 'indefiniteness' of a leave request as a justification for avoiding the accommodation, the interactive process should compel the employer to explain its particular difficulty surrounding the lack of a return date, and to invite the employee to seek an approximate return to work [time frame] from a health care provider." We do not disagree. The defendant, however, did attempt to engage in the necessary interactive process, and the plaintiff did not respond for more than two weeks.

[2] In making a claim for disability discrimination, the plaintiff has the burden to prove all three elements of the prima facie case. See *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 415. Because she has failed to establish the second element, we need not address the plaintiff's remaining claims.