******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DIANNA BARBABOSA *v.* BOARD OF EDUCATION OF THE TOWN OF MANCHESTER
## (AC 41304)

Elgo, Bright and Beach, Js.

*Syllabus*

The plaintiff, a school paraprofessional, sought to recover damages from her employer, the defendant board of education, for, inter alia, employment discrimination in violation of statute (§ 46a-60 [b]). The plaintiff claimed that the defendant discriminated against her on the basis of her disability, suspended her without pay for excessive absenteeism and failed to provide her with a reasonable accommodation for her disability. The plaintiff asserted that she was disabled because she suffers from fibromyalgia, anxiety, depression, asthma and rheumatoid arthritis, and had requested certain finite absences as a reasonable accommodation. The plaintiff had long-standing and well documented issues with absenteeism and tardiness throughout her employment. Her performance reviews, which generally provided that she met expectations, stated that she needed to be on time to school, and that her excessive absences affected the management of classrooms, and negatively affected teachers' planning and lessons. The trial court granted the defendant's motion for summary judgment and rendered judgment for the defendant on the plaintiff's disability discrimination and reasonable accommodation claims. The court determined inter alia, that there was no genuine issue of material fact that attendance was an essential function of the plaintiff's position and that she could not perform that essential function with or without a reasonable accommodation. The court further determined that her request for intermittent prospective absences was not a reasonable accommodation because it would eliminate that essential function. On appeal to this court, the plaintiff claimed that the trial court improperly rendered summary judgment because a genuine issue of material fact existed that was common to both her discrimination and reasonable accommodation claims, namely, whether she could perform the essential functions of her position with or without a reasonable accommodation. *Held* that the trial court properly rendered summary judgment in favor of the defendant, as the evidence showed that there was no genuine issue of material fact that attendance was an essential function of the plaintiff's position, and that prior to and at the time of her suspension she was not performing that essential function and was not able to perform it with or without her proposed reasonable accommodation; that court relied on undisputed evidence that attendance was an essential function of a position that mandates interaction with schoolchildren, the plaintiff's generally positive performance evaluations consistently expressed the defendant's concerns with her attendance and tardiness, and the same evidence that established that there was no genuine issue of material fact that attendance was an essential function of the plaintiff's job also proved that her proposal for intermittent extended leave was not a reasonable accommodation, as a matter of law, because that proposal would have eliminated the essential job function it purported to address, exacerbated her attendance issues and further undermined her ability to maintain regular attendance.

Argued February 7—officially released April 23, 2019

*Procedural History*

Action to recover damages for, inter alia, alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Robaina, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Vincent F. Sabatini*, with whom, on the brief, was *James V. Sabatini*, for the appellant (plaintiff).

*Alexandria L. Voccio*, for the appellee (defendant).

*Opinion*

BRIGHT, J. In this employment discrimination action, the plaintiff, Dianna Barbabosa, appeals from the summary judgment rendered by the trial court in favor of the defendant, the Board of Education of the Town of Manchester, on the plaintiff's complaint, which alleged that the defendant had discriminated against her on the basis of her disability and had failed to provide her with a reasonable accommodation.[1] On appeal, the plaintiff claims that the court improperly rendered summary judgment because a genuine issue of material fact existed as to a common essential element of both of her claims, namely, whether the plaintiff could perform the essential functions of her job with or without a reasonable accommodation. We affirm the judgment of the trial court.

The record before the court, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following facts and procedural history. In 2007, the plaintiff was hired by the defendant as a full-time one-on-one paraprofessional. A paraprofessional generally is not responsible for initiating lesson plans, but, rather, assists a professional staff member by working directly with the students to meet the students' needs. Between 2007 and 2009, the plaintiff worked as a one-on-one paraprofessional assigned to a single student with autism at the Waddell, Buckley, Keeney, and Bowers schools. Since the fall of 2009, the plaintiff worked as a classroom paraprofessional at Robertson School.

While working at Robertson School, the plaintiff was a member of a union, the Manchester Para/Tutor Association, which had two successive collective bargaining agreements[2] (CBA) with the defendant that outlined certain terms of employment, including working conditions, leaves of absence, and the disciplinary procedures that are relevant to the issues before us. In particular, the CBA provided that paraprofessionals, like the plaintiff, would have three personal days as well as fifteen sick days each year, and other types of leave subject to the defendant's prior approval. An absence that was taken without the available time off was classified as nonpaid leave.

Throughout her employment with the defendant, the plaintiff had long-standing and well documented issues with absenteeism and tardiness. Over the first seven months of her employment, the plaintiff was absent for thirty days. Twelve of those days accounted for a nonpaid leave of absence that was approved by the defendant, eight days were due to personal illness, five days were absences as a result of her son's broken leg, two days were personal days, two days were unapproved absences without explanation, and one was a professional day. In March, 2008, the plaintiff met with

Edward Dillon, the elementary special education supervisor, who discussed the plaintiff's recent unexplained absences and encouraged the plaintiff to follow the proper procedures for taking prospective absences. A letter memorializing this meeting was sent to the plaintiff.

On May 12, 2008, the plaintiff was issued a formal written warning regarding her excessive absences. Therein, Dillon expressed his concern that the plaintiff's excessive absences could "have a negative impact on the academic and behavioral growth of . . . [a particular] student in [its] district wide program for students with autism." In 2008, 2009, and 2010, the plaintiff received overall satisfactory annual performance reviews. Nevertheless, issues relating to her attendance continued to be a concern for the defendant. The plaintiff's 2008 review expressed the concern that she needed to improve her attendance, which "is especially important in order to provide the consistency and continuity important for the children and the program." On March 25, 2010, the plaintiff was issued a verbal warning regarding her tardiness over the several preceding weeks.

Between July 1, 2011, and June 30, 2012, the plaintiff was absent for twenty-two full days and four partial days. On September 12, 2011, the plaintiff received another verbal warning, confirmed by a follow-up letter, about her excessive absences during the past year, and she was directed to follow the proper procedures for taking days off. In 2011 and 2012, the plaintiff received annual performance reviews that provided that she was meeting expectations, but that she "must improve her attendance," which continued to be an issue. In particular, the plaintiff's January 23, 2012 midyear evaluation gave her an "unsatisfactory" rating for dependability and reliability, and noted that the plaintiff did not "consistently maintain the schedule established for the [two] classrooms that she serves."

Between July 1, 2012, and June 30, 2013, the plaintiff was absent for a total of twenty full days and five partial days. On November 16, 2012, a meeting was held between the plaintiff, a human resources specialist, Terri Smith, and two of the union copresidents, Aaliyah Blade and Kim Colburn, to discuss the plaintiff's continued absenteeism. The parties discussed the negative impact of the plaintiff's attendance on the students, and the plaintiff was instructed that she would have to provide a doctor's note or medical documentation for future absences. She was informed that she was ineligible for leave pursuant to the Family and Medical Leave Act (FMLA); 29 U.S.C. § 2601 et seq. (2012); for the "2012/2013 school year" because she worked less than 1250 hours in the prior twelve months. She also was warned that further violations or unapproved absences could result in suspension. A letter memorializing this

meeting was sent to the plaintiff. Although the plaintiff denied receiving the letter, she confirmed that it accurately described what occurred at the meeting.

Between July 1, 2013, and April 7, 2014, the plaintiff was absent for a total of seventeen full days and six partial days. In 2013, the plaintiff received two performance reviews that generally provided that she was meeting expectations, but that she "must arrive at school on time [and] . . . [s]he also must improve her attendance." On December 5, 2013, the plaintiff received another verbal warning, which was confirmed in a letter, about her excessive absences. On December 17, 2013, a meeting was held between the plaintiff, Smith, Blade, Colburn, and another human resources specialist, Nilsa Dorsey, to discuss the plaintiff's continued and excessive absenteeism. The plaintiff was referred to the employee assistance program, and she was warned that further unexcused absences could result in disciplinary action. A letter memorializing this meeting and enclosing the FMLA paperwork was sent to the plaintiff.

On January 21, 2014, the plaintiff filed an FMLA request for intermittent leave from December 23, 2013 through December 31, 2014, on the basis of her claimed serious health condition. She explained that intermittent leave was required because she was suffering from asthma flare-ups that trigger bronchitis, migraine headaches, fibromyalgia that causes excruciating joint and muscle pain with flare-ups, which causes her to not be able to work or move her arms over her head.[3] She attached to her request a certification from her health care provider, rheumatologist Barbara Kage, who detailed that the plaintiff was suffering from numbness in her hands and feet, fatigue, muscle and joint aches, pain and stiffness, and prolonged morning stiffness. Dr. Kage stated that she had referred the plaintiff to physical therapy, and for a psychiatric evaluation for anxiety and depression. Dr. Kage opined that the plaintiff would require time off for appointments and occasional flare-ups, which she estimated would occur one to two times per month. On the same date, the plaintiff's request for FMLA leave was denied because she had not met the hours of service requirement.

Also on January 21, 2014, the plaintiff filed a Manchester public schools leave of absence request for five consecutive days or longer. Therein, the plaintiff sought short-term sick leave with pay from August 28, 2013 through June 14, 2014, in which she handwrote "intermittent" on the top of the form and referenced her FMLA request for intermittent leave. On the same date, the plaintiff's leave of absence request was granted by the defendant to the extent of her then remaining sick time. The plaintiff thereafter returned to work and was absent for eight consecutive school days between March 26, 2014, and April 4, 2014.

Between September 17, 2013, and March 31, 2014 the plaintiff submitted to the defendant notes from her health care providers to account for twenty-one absences during that time frame, including one day for taking her son for an evaluation, three days for bronchitis, one day for a follow-up visit, five days for vertigo and a sinus infection, one day for an unspecified illness, one day for a neurological examination, one day for an appointment, and eight days for influenza.

On April 7, 2014, a meeting was held between the plaintiff, Smith, Dorsey, Colburn, and another union copresident, Patricia Balboni. At the meeting, the plaintiff was suspended for thirty days without pay for her excessive absenteeism. A letter memorializing this meeting was sent to the plaintiff. The plaintiff then returned to work after her suspension.[4] In 2014, 2015, and 2016, the plaintiff received performance reviews that generally provided that she was meeting expectations, but that she needed to be "[o]n time to school" and that her "excessive absences continue to affect the management of the teachers' classrooms. [T]eachers . . . rely on her . . . . [T]herefore, when she is absent, this affects their planning and the lesson negatively."

On July 20, 2016, after receiving a release of jurisdiction from the Commission on Human Rights and Opportunities, the plaintiff filed the present action against the defendant. In her complaint, the plaintiff alleged that she was disabled because she suffers from fibromyalgia, anxiety, depression, asthma, and rheumatoid arthritis. She alleged that the defendant was aware that she was disabled, and that she requested certain finite absences as a reasonable accommodation for her disability. She also alleged that the defendant had been penalizing her for her disability related absences and had suspended her without pay. In count one, the plaintiff alleged that the defendant had violated General Statutes § 46a-60 (b) (1)[5] because it discriminated against her and suspended her because of her disability. In count two, the plaintiff alleged that the defendant had violated § 46a-60 (b) (1) because it failed to provide the plaintiff with a reasonable accommodation for her disability.

On June 26, 2017, the defendant filed a motion for summary judgment and a memorandum of law in support thereof. In its memorandum of law, the defendant argued, in relevant part, that it was entitled to judgment as a matter of law as to the plaintiff's disability discrimination and reasonable accommodation claims because there was no genuine issue of material fact that the plaintiff could not perform the essential functions of her position with or without a reasonable accommodation. On October 2, 2017, the plaintiff filed an objection and a memorandum of law in support thereof. In her memorandum of law, the plaintiff argued, among other things, that a genuine issue of material fact existed as to whether she could perform the essential functions

of her position with or without a reasonable accommodation. Both parties submitted a number of exhibits in support of their respective positions.

On January 11, 2018, the court issued a memorandum of decision in which it granted the defendant's motion for summary judgment. The court determined, inter alia,[6] that the defendant was entitled to judgment as a matter of law as to the plaintiff's disability discrimination and reasonable accommodation claims because there was no genuine issue of material fact that the plaintiff could not perform the essential functions of her job with or without a reasonable accommodation. In particular, the court determined that the undisputed evidence submitted by the defendant established that there was no genuine issue of material fact that attendance was an essential function of the plaintiff's position as a paraprofessional, and that the plaintiff's request for intermittent prospective absences was not a reasonable accommodation because it would eliminate that essential function of her position. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiff claims that the court improperly rendered summary judgment. In particular, the plaintiff argues that her generally positive performance evaluations establish a genuine issue of material fact as to whether she was qualified for her position. She also argues that a genuine issue of material fact exists as to whether her requests for an intermittent leave of absence constituted a reasonable accommodation that did not eliminate an essential function of the position. We disagree.

We begin by setting forth the relevant standard of review and legal principles that govern our review. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The courts are in entire agreement that the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On

appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citations omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d 1 (2018).[7]

Section 46a-60 (b) (1) prohibits an employer from refusing to hire, discharging, or otherwise discriminating against any person on the basis of, inter alia, their "present or past history of mental disability, intellectual disability, learning disability, [or] physical disability." To establish a prima facie case of employment discrimination pursuant to § 46a-60 (b) (1) on the basis of either a disparate treatment disability discrimination claim or a reasonable accommodation claim, a plaintiff must establish a common essential element, namely, that he or she is qualified for the position. See *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 415, 425–26, 944 A.2d 925 (2008). "In the disability context, a prima facie case for disparate treatment is established under the [*McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)] framework if the plaintiff shows: (1) he suffers from a disability or handicap, as defined by the [applicable statute]; (2) he was nevertheless able to perform the essential functions of his job, either with or without reasonable accommodation; and that (3) [the defendant] took an adverse employment action against him because of, in whole or in part, his protected disability." (Internal quotation marks omitted.) *Curry* v. *Allan S. Goodman, Inc.*, supra, 426. In order to establish a prima facie case for a reasonable accommodation claim, "the plaintiff must produce enough evidence for a reasonable jury to find that (1) he is disabled within the meaning of the [statute], (2) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff's] disability, did not reasonably accommodate it." (Internal quotation marks omitted.) Id., 415.

In order for an employee to be qualified, he or she must be able to "perform the essential functions of the job with or without a reasonable accommodation . . . ." (Internal quotation marks omitted.) Id.; see *Thomson* v. *Dept. of Social Services*, 176 Conn. App. 122, 128–29, 169 A.3d 256 (same), cert. denied, 327 Conn. 962, 172 A.3d 800 (2017). In determining whether an employee is qualified, "[w]e look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both." *Feliciano* v. *Autozone, Inc.*, 316 Conn. 65, 73, 111 A.3d 453 (2015).

Both this court and "numerous federal courts have recognized that attendance at work is a necessary job function. An employee who is unable to come to work

on a regular basis [is] unable to satisfy any of the functions of the job in question, much less the essential ones. . . . [Federal Circuit Courts of Appeals] have also held that regular and reliable attendance is a necessary element of most jobs." (Citations omitted; internal quotation marks omitted.) *Ezikovich* v. *Commission on Human Rights & Opportunities*, 57 Conn. App. 767, 775–76 n.5, 750 A.2d 494, cert. denied, 253 Conn. 925, 754 A.2d 796 (2000); see *Francis* v. *Wyckoff Heights Medical Center*, 177 F. Supp. 3d 754, 768 (E.D.N.Y. 2016) (regular attendance at work is "an essential requirement of virtually all employment" [internal quotation marks omitted]).[8]

The trial court in the present case relied on three federal cases, which we find instructive.[9] In *Pierce* v. *Highland Falls-Fort Montgomery Central School District*, Docket No. 08-civ-1948 (RKE), 2011 WL 4526520 (S.D.N.Y. September 28, 2011), the employee, a special education teacher, had been absent forty-four times and thirty-five times in consecutive school years because he claimed to have suffered from depression, drug addiction, and osteoarthritis. Id., *1–3. Despite the fact that the employee previously had received positive evaluations, he subsequently was suspended on the basis, inter alia, of his excessive absences, and he later took early retirement. Id., *3. The employee then filed an action against his employer, which filed a motion for summary judgment in response. Id. The court granted the employer's motion for summary judgment on the ground that the employee was not qualified because he could not perform an essential function of his employment with or without a reasonable accommodation. Id., *4. In particular, the court held that federal discrimination law "does not require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's disability . . . [or] to make a reasonable accommodation for an employee who does not attend work, nor does [federal discrimination law] . . . require an employer to retain such an employee." (Internal quotation marks omitted.) Id., *5. It thus held that "regardless of whether [the employee] had the necessary teaching skills, he cannot be considered a qualified individual . . . based on his admitted failure to meet the attendance requirements of his employment." Id. The court also held that the employee's request to his employer to permit him to work part-time or to refer him to treatment did not constitute a reasonable accommodation because that proposal "would eliminate the requirement of regular attendance, which is essential to his employment as a teacher." Id., *6.

In *Ramirez* v. *New York City Board of Education*, 481 F. Supp. 2d 209, 213–14 (E.D.N.Y. 2007), the employee, a provisional preparatory teacher, had been absent fifty-two days and forty-two days in consecutive school years because he was suffering from epilepsy, depression, and high blood pressure. Id., 214. The employee received

a satisfactory performance review for the first year; however, his employment was terminated after he received an unsatisfactory performance review for the second year. Id., 214–15. Thereafter, the employee filed an action and the employer moved for summary judgment, which was granted by the court because, inter alia, the employee was unable to perform an essential function of that job. Id., 221. In particular, the court, relying on the employer's policy that absences are "disruptive to the school and injurious to the children's education"; (internal quotation marks omitted) id., 222; determined that the employee "ha[d] not demonstrated that he [could] perform an essential function of his employment position—showing up for work. Though all parties agree that [the employee] could perform his duties within the classroom as a teacher, [he] was absent from the classroom for nearly a third of the school year." (Internal quotation marks omitted.) Id., 221. The court also recognized the principle that there could be no reasonable accommodation for a teacher whose attendance is an essential function of his or her position. Id.

In *Mescall* v. *Marra*, 49 F. Supp. 2d 365, 368–69 (S.D.N.Y. 1999), the employee, a school guidance counselor, claimed to have been disabled because she was suffering from a mental impairment due to stress, depression, and anxiety. The employee was absent forty-one days over the span of two and one-half school years as a result of nondisability related illnesses or injuries. Id., 374 and n.19. Despite the fact that the employee had received two out of three satisfactory annual performance reviews, her employment was terminated because of her excessive absences. Id., 370. She then filed an action against her employer; id., 371; which, in turn, filed a motion for summary judgment. Id., 367. The court granted the employer's motion for summary judgment and, relying on the employer's policies and the employee's testimony, determined that an essential function of her position was to maintain regular attendance, which she failed to do. Id., 374. The court further held that "no reasonable accommodation could have improved [the employee's] attendance record because none of these absences was the result of her alleged mental disability. . . . To the extent that she requests the accommodation of ignoring medically documented sick days when calculating her attendance record, this accommodation is unreasonable as a matter of law because it would eliminate an essential function of the job." (Internal quotation marks omitted.) Id.

In the present case, the defendant's evidence, submitted in support of its motion for summary judgment, established that there is no genuine issue of material fact that attendance is an essential function of the plaintiff's position as a paraprofessional. As the trial court aptly recognized, "there is [an] abundance of evidence that points to attendance being an important essential

function of a paraprofessional. The . . . CBA provides a few examples. The CBA provides a clear delineation of the work year and holidays, work hours, and sick leave for full-time paraprofessionals. . . . The CBA specifically provides that [i]f the student to whom a one-on-one paraprofessional is assigned is absent on any given day, the building administrator or designee shall determine the responsibilities for the one-on-one paraprofessional for any such day. . . . The CBA also provides that, whenever possible, a pregnant parapro-fessional should notify the director of human resources well in advance of her delivery date, so that the [defen-dant] can plan appropriate coverage. . . . Addition-ally, the CBA highlights that when taking a leave without pay, it is expected that leaves will be arranged so that they are taken at the end of the school term." (Citations omitted; internal quotation marks omitted.) The CBA also provided that the work year for a paraprofessional would increase when the student school year increased, and that the work year would decrease when the stu-dent school year decreased. The trial court determined that "[a]ll of these instances discussing attendance serve as evidence that it is an expectation that the paraprofessional will be present at work or obtain proper shift coverage."

The trial court also relied on the deposition testimony of two of the union copresidents, Blade and Colburn, who both "testified to the importance of attendance. . . . Blade testified that 'when you have someone assigned to students and the person doesn't show up, the student digresses in their behavior and becomes more difficult. And that's why it's really critical to have the . . . paraprofessionals to be on the job.' Colburn testified that '[Smith] basically told [the plaintiff] that our children need her to be at work because . . . as [paraprofessionals], oftentimes we work with very spe-cial-needs children; that's the reason we have a job. And our children—they need that constant consistency. They need that—I'll give you an example. We just lost a para[professional] recently to an autistic child, and in the process of hiring a new person for him, this child, literally screaming, and he, literally, would go into the library and doesn't remember his lunch number. That's something he just automatically just punched in the keypad, and he could not—for two weeks, he could not remember his lunch number. He did not have that constant supervision, that constant friend to be with him. . . . When you take that excessive amount [of absences], there's a lack of support for the students, and they can't really, you know—it's like when they go to school, they need to see a familiar face. They need to see teachers there and they need to see the familiar face, but they don't want to go in there not having that consistency.' . . .

"Furthermore, in a letter from . . . Dillon, the ele-mentary special education supervisor, to the plaintiff,

dated May 12, 2008, it is stated that the plaintiff's absences 'can have a negative impact on the academic and behavioral growth of a very impacted kindergarten student in [Manchester's] districtwide program for students with autism.' . . . In another letter from Smith to the plaintiff, dated November 20, 2012, it is articulated that the parties 'discussed the importance of [the plaintiff's] regular attendance at work and the success of students at Robertson Elementary School.' . . . Indeed, the plaintiff herself, seems to have understood that attendance was important. In her memorandum in opposition [to the defendant's motion for summary judgment], the plaintiff concede[d] that the students 'need her available and working.' . . .

"Lastly, the evaluations of the plaintiff over the years of her employment as a paraprofessional point to the importance of attendance as well as the plaintiff's long-standing issues with absenteeism and tardiness. The record before the court contains evaluations from 2007 through 2016. . . . Many of the evaluations contain comments such as: '[The plaintiff's] excessive absences continue to affect the management of the teachers' classrooms [and] [t]hey rely on her during center time; therefore, when she is absent, this affects their planning and the lesson negatively'; '[the plaintiff] must arrive at school on time [and] [s]he also must improve her attendance'; '[a]ttendance improved from last year, but still an issue'; '[the plaintiff] needs to follow her work schedule and be in her designated work area, ready to work, in a timely fashion'; '[the plaintiff] must improve her attendance'; 'very high number of absences'; and, '[h]er attendance/absenteeism have been documented and this is an area requiring improvement. This is especially important in order to provide the consistency and continuity important for the children and the program.' " (Citations omitted.) The plaintiff does not dispute any of the evidence relied on by the court for its conclusion that attendance is an essential function of the plaintiff's job. Nor does she dispute the evidence that she failed to perform this essential function in the years leading up to her suspension.

The undisputed evidence the court relied on is comparable to that relied on by the courts in *Pierce*, *Ramirez*, and *Mescall*, which all held that attendance is an essential function of a position that mandates interaction with schoolchildren. We disagree with the plaintiff's argument that her generally positive performance evaluations create a genuine issue of material fact; rather, these evaluations undercut the plaintiff's position because, although the reviews generally provide that she was meeting expectations in terms of performance, they also consistently express the defendant's concerns with the plaintiff's attendance and tardiness. Of the thirteen complete performance reviews that were submitted by both parties in connection with the defendant's motion for summary judgment, ten contain a

concern regarding the plaintiff's attendance or punctuality. Furthermore, the fact that the plaintiff was meeting the defendant's performance expectations while attending work, as also was the case in *Pierce*, *Ramirez*, and *Mescall*, does not create a genuine issue of material fact as to whether her attendance at work was an essential function of her job. Indeed, as the trial court reasoned, "[t]he evaluations of the plaintiff show that she can perform the duties of a paraprofessional *when she goes to work*, but the plaintiff is absent far too often." (Emphasis in original.)

Having concluded that there was no genuine issue of material fact that attendance was an essential function of the plaintiff's position, and that the plaintiff prior to and at the time of her suspension was not performing this essential function, we turn to consider whether there is a genuine issue of material fact as to whether the plaintiff's leave of absence requests constituted a reasonable accommodation that did not eliminate that essential function. The plaintiff filed two leave of absence requests on January 21, 2014, which essentially proposed an extended intermittent leave of absence for an uncertain amount of days for the period of August 28, 2013 through December 31, 2014.[10]

"The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment . . . . To satisfy this burden, [the] [p]laintiff must establish both that [her] requested accommodation would enable [her] to perform the essential functions of [her] job and that it would allow [her] to do so at or around the time at which it is sought." (Citation omitted; internal quotation marks omitted.) *Thomson* v. *Dept. of Social Services*, supra, 176 Conn. App. 129. "[A] medical leave of absence is a recognized form of accommodation. . . . Federal courts have held, however, that [t]he duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover . . . ." (Citations omitted; internal quotation marks omitted.) Id., 130.[11] Although "reasonableness is normally a question of fact, summary judgment may be granted in cases where, as here, the plaintiff's proposed accommodation would eliminate the essential functions of the job." (Internal quotation marks omitted.) *Pierce* v. *Highland Falls-Fort Montgomery Central School District*, supra, 2011 WL 4526520, *6.

In *Pierce*, the court determined that the employee's proposed accommodation that he be permitted to work part-time would not be reasonable because it "would eliminate the requirement of regular attendance, which is essential to his employment as a teacher." Id. In *Ramirez*, the court recognized the principle that "[t]here could be no reasonable accommodation [for a

teacher with a history of excessive absenteeism] because attendance is an essential function of [his] employment." (Internal quotation marks omitted.) *Ramirez* v. *New York City Board of Education*, supra, 481 F. Supp. 2d 221. In *Mescall*, the court determined that "no reasonable accommodation could have improved [the employee's] attendance record because none of these absences was the result of her alleged mental disability. . . . To the extent that she requests the accommodation of ignoring medically documented sick days when calculating her attendance record, this accommodation is unreasonable as a matter of law because it would eliminate an essential function of the job." (Internal quotation marks omitted.) *Mescall* v. *Marra*, supra, 49 F. Supp. 2d 374.

Here, the same evidence submitted by the defendant that establishes that there was no genuine issue of material fact that attendance is an essential function of the plaintiff's job also proves that the plaintiff's proposal for intermittent extended leave was not a reasonable accommodation, as a matter of law, because that proposal would eliminate the very essential job function it purports to address. Put another way, we fail to see how it is possible to perform the essential function of attending work through an accommodation that provides for even more absences from work. As the court aptly noted, "[the plaintiff] has requested finite absences as a reasonable accommodation, and to the extent that this is a request for more days off or perhaps ignoring medically documented sick days when calculating her attendance record, this would be deemed unreasonable, as it would eliminate an essential function of the job." (Internal quotation marks omitted.) In fact, the plaintiff's request to permit her to take intermittent leave, above and beyond that for which she was eligible or already approved, would only exacerbate her existing attendance issues and would further undermine her ability to perform an essential function of her employment, namely, maintaining regular attendance. It is, thus, not a reasonable accommodation. Consequently, the evidence, viewed in the light most favorable to the plaintiff, establishes that, at the time she was suspended, there was no genuine issue of material fact that she was not able to perform an essential function of her job, either with or without her proposed accommodation. Therefore, we conclude that the court properly rendered summary judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court also rendered summary judgment on the plaintiff's third claim that alleged retaliation for the reason that the claim was inadequately briefed. That aspect of the court's judgment is not challenged on appeal.

[2] The first agreement was operative between 2009 and 2013, and the second agreement was operative between 2013 and 2017. For clarity, we hereinafter refer to the two agreements collectively as the CBA.

[3] The plaintiff wrote this explanation in response to an inquiry on the

FMLA form that provides: "If intermittent or reduced-leave schedule is being requested, please explain why it is needed and the proposed leave schedule . . . ." The plaintiff did not provide a proposed leave schedule other than to identify the period for her expected leave to be December 23, 2013 through December 23, 2014.

[4] On approximately April 8, 2014, the plaintiff filed another FMLA request for intermittent leave as well as another Manchester leave of absence request with the defendant. In both requests, the plaintiff sought retroactive leave for the time period between March 26, 2014, and April 6, 2014. Nevertheless, the plaintiff does not recall receiving a response to these requests and the record before this court is unclear as to the resolution of both requests. As a result of this uncertainty and the parties' reliance on the first set of leave requests filed in January, 2014, we need not address further the April, 2014 requests.

[5] General Statutes § 46a-60 was amended by No. 17-118, § 1, of the 2017 Public Acts, which added a new subsection (a) regarding definitions and redesignated the existing subsections (a) and (b) as subsections (b) and (c). Therefore, although the parties and the trial court cite to the earlier version of the statute, for clarity, we refer to the current revision of the statute where applicable. See *Boucher* v. *Saint Francis GI Endoscopy, LLC*, 187 Conn. App. 422, 424 n.1,        A.3d     , cert. denied, 331 Conn. 905,        A.3d        (2019).

[6] The court also concluded that a genuine issue of material fact existed as to whether the plaintiff was disabled. The defendant disagrees with the court's conclusion and argues on appeal, as an alternative ground for affirmance, that as a matter of law, the plaintiff failed to establish that she was disabled. Given our conclusion that the court properly held that there is no genuine issue of material fact that the plaintiff is not qualified, we need not reach the defendant's alternative argument. In addition, the court held that the defendant was entitled to summary judgment on the plaintiff's third claim that alleged retaliation. That conclusion is not challenged on appeal. See footnote 1 of this opinion.

[7] The trial court in its memorandum of decision seemed to suggest that a plaintiff has the initial burden to oppose a motion for summary judgment challenging an employment discrimination claim. We disavow that suggestion because the burden on each party in connection with a motion for summary judgment remains unchanged in an employment discrimination case. See *Feliciano* v. *Autozone, Inc.*, 316 Conn. 65, 72–73, 111 A.3d 453 (2015).

[8] To the extent that the plaintiff on appeal maintains that she has the burden of establishing only that she satisfied the minimal qualifications of the position, we disagree. See *Borkowski* v. *Valley Central School District*, 63 F.3d 131, 135 (2d Cir. 1995) ("[a]lthough the phrase 'otherwise qualified' is hardly unambiguous on its face, its meaning in the context of an employment discrimination claim is fairly clear: an individual is otherwise qualified for a job if she is able to perform the essential functions of that job, either with or without a reasonable accommodation"). Indeed, the plaintiff, contrary to the gravamen of her position, explicitly recognizes this principle in her appellate brief, stating that "[t]he trial court was correct to state that [the] plaintiff is obligated to show that she can perform the essential functions of the job with or without a reasonable accommodation of a disability."

[9] Despite the trial court's considerable reliance on these three federal cases, the plaintiff neither references nor attempts to distinguish any of the three cases in her brief on appeal.

[10] As outlined previously in this opinion, one request was for an FMLA intermittent leave from December 23, 2013 through December 31, 2014, which was supported by a certification from Dr. Kage. This FMLA request was denied on the ground that she was ineligible because she had not met the hours of service requirement. The other request was a Manchester public schools leave of absence request for five consecutive days or longer in which the plaintiff cited her FMLA request and sought short-term sick leave with pay from August 28, 2013 through June 14, 2014. This request was approved by the defendant to the extent that the plaintiff had available sick time.

[11] We note that in No. 17-118, § 1, of the 2017 Public Acts, the legislature amended § 46a-60 to add subdivision (a) (2), which provides the following definition for the term "reasonable accommodation" as used in that section: " 'Reasonable accommodation' means, but shall not be limited to, being permitted to sit while working, more frequent or longer breaks, periodic rest, assistance with manual labor, job restructuring, light duty assignments,

modified work schedules, temporary transfers to less strenuous or hazardous work, time off to recover from childbirth or break time and appropriate facilities for expressing breast milk . . . ." See footnote 5 of this opinion. Nevertheless, we do not rely on this subdivision because it was not in effect during the periods of time at issue in this appeal.

---