******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TANYA STUBBS *v.* ICARE MANAGEMENT, LLC, ET AL.
## (AC 42551)

Keller, Bright and Beach, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants for employment discrimination pursuant to the Connecticut Fair Employment Practices Act (§ 46a-51 et seq.) following the termination of her employment. The plaintiff, who was employed by the defendants as a certified nursing assistant (CNA), alleged that she was approved for unpaid leave by the defendants in order to undergo knee surgery but, while she was recovering from that surgery, she was terminated for failing to report to work and for failing to report her absences on two dates that occurred approximately one week before her surgery. The plaintiff alleged that prior to these absences, she received a phone call from one of the defendants' employees, who told her not to report to work on those two dates, as the defendants were overbooked with CNAs. Since her surgery, the plaintiff has not sought work as a CNA, because she believed she has not yet recovered sufficiently to perform the essential functions required of that position. The defendants filed a motion for summary judgment and in support thereof, submitted various documents including the defendants' attendance policy, portions of the plaintiff's sworn deposition, disciplinary reports warning the plaintiff about her absenteeism and the certified letter sent to the plaintiff, which terminated her employment. The trial court granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Held*:

1. The trial court erred in rendering summary judgment in favor of the defendants as to the plaintiff's discrimination claims, as there was a genuine issue of material fact as to whether the termination of the plaintiff's employment was pretextual and as to whether, at the time her employment was terminated, the plaintiff was qualified to perform the essential functions of her job, with a reasonable accommodation of a leave of absence: the record was devoid of any evidence regarding how the defendants treated employees similarly situated to the plaintiff who had sought leave to accommodate a disability, and a jury reasonably could conclude that the defendants told the plaintiff not to report to work on the dates at issue in order to create a pretext so that they would have a ground to terminate her employment independent of her disability and of her request for a leave of absence accommodation; the court's conclusion that the plaintiff failed to establish a prima facie case of discrimination based on the material fact that the plaintiff was not qualified to perform the essential functions of her job was incorrect, as it was based on evidence of the plaintiff's ability to perform after her employment was terminated, the determination of whether the defendant was qualified, with or without an accommodation, must be made at the time of termination.

2. The trial court erred in rendering summary judgment for the defendants on the plaintiff's reasonable accommodation claims, as there was at least a genuine issue of material fact as to whether the plaintiff could perform the essential functions of her job with an accommodation of a leave of absence to have and recover from surgery; the court incorrectly focused on the plaintiff's accommodations after the defendants terminated her employment, had the defendants terminated the plaintiff's employment at the end of the three month leave of absence, her inability to perform the essential functions of her job at that time would have been highly relevant, and likely to be dispositive of her claim, however, the defendants terminated her employment shortly after her leave of absence had begun and thus, it was expected, although not certain, that the plaintiff would have been able to return to work following the accommodation of a leave of absence.

3. This court declined to review the plaintiff's claims alleging retaliation, as those claims had been inadequately briefed; the brief was devoid of any

discussion of the elements of retaliation, the law governing such, or the court's analysis of the plaintiff's claims.

Argued February 5—officially released June 30, 2020

*Procedural History*

Action to recover damages for, inter alia, alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the trial court, *S. Richards, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part; further proceedings.*

*Zachary T. Gain*, with whom, on the brief, was *James V. Sabatini*, for the appellant (plaintiff).

*Rachel V. Kushnel*, for the appellees (defendants).

*Opinion*

BRIGHT, J. The plaintiff, Tanya Stubbs, appeals from the summary judgment rendered by the trial court in favor of the defendants, ICare Management, LLC (ICare), and Meriden Care Center, LLC (Meriden), on the plaintiff's complaint, which alleged violations of the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq. In particular, the plaintiff alleged that the defendants terminated her due to her disability, failed to provide her with a reasonable accommodation for her disability, and retaliated against her for requesting a reasonable accommodation.[1] On appeal, the plaintiff claims that the court erred in determining that there were no genuine issues of material fact as to whether (1) the defendants' stated reason for their termination of the plaintiff's employment was pretextual and as to whether, at the time her employment was terminated, she was qualified, with or without a reasonable accommodation, to perform the essential functions of her job, and (2) the defendants failed to provide the plaintiff with a reasonable accommodation. Because there are genuine issues of material fact as to the plaintiff's claims of discrimination and failure to accommodate, we reverse the judgment of the trial court as to those claims. We affirm the trial court's judgment as to the plaintiff's claims of retaliation because she has failed to brief the claims and, therefore, has abandoned them.

The following facts, viewed in the light most favorable to the plaintiff, and procedural history are relevant to our analysis of the plaintiff's claims on appeal. Meriden is a skilled nursing facility that does business as Silver Springs Care Center; ICare manages Silver Springs Care Center. The plaintiff began working for the defendants in April, 2015, as a certified nursing assistant (CNA). Prior to being hired by the defendants, the plaintiff had worked as a licensed CNA since shortly after she graduated from high school in 1982. When she was hired by the defendants, the plaintiff was able to perform the essential functions of her job, which included pushing residents in wheelchairs, pushing medical carts, and direct patient care, including feeding and assisting with ambulation. In June, 2015, the defendants gave the plaintiff a positive performance review. The review did not identify any function of her job that the plaintiff could not perform. In fact, the evaluation stated that the plaintiff met the standards for all job requirements, except for attendance, as to which the evaluation stated that there was one issue, and that the plaintiff had taken actions to ensure that the issue did not arise again. The evaluation also described the plaintiff as an excellent employee.

The plaintiff does have a physical disability[2] and had a history of knee problems, which resulted in multiple surgeries on both of her knees, before she began work-

ing for the defendants. Nevertheless, she was experiencing no difficulties with her knees when she was hired by the defendants. At some point while working for the defendants, the plaintiff began experiencing severe pain in both knees. Consequently, she requested that her work hours be reduced from twenty hours per week to twelve hours per week. The defendants agreed. By the end of 2015, the plaintiff informed the defendants that she needed to have surgery on her right knee. She requested leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., which request the defendants denied because the plaintiff had not worked for the defendants long enough to qualify for such leave. The defendants informed the plaintiff, however, that she could apply for an unpaid leave of absence, which she did. The defendants approved the plaintiff's unpaid leave of absence, to begin on February 10, 2016, so that the plaintiff could have and recover from her knee surgery. It was anticipated that the plaintiff would need approximately three months to recuperate.

While the plaintiff was recovering from surgery, she received a phone call from an employee of one of the defendants informing her that her employment was being terminated for failing to report to work and for failing to call to report her absence, which the defendants termed a "no call no show," on February 6 and 7, 2016.[3] Thereafter, the plaintiff received a letter from Gail Mari, an employee of Meriden, confirming the plaintiff's termination from employment. The letter stated that the plaintiff's employment was terminated "due to second occurrence of no call no show activity on [February 6 and 7, 2016]."[4] The defendants' "Daily eCentral Facility Call Out/Replacement Log," submitted by the plaintiff in opposition to the defendants' motion for summary judgment, includes an entry for the plaintiff, dated February 6, 2016, stating that the plaintiff was a "no call no show" on that date. The log does not contain an entry for the plaintiff for February 7, 2016. In addition, no party submitted an affidavit or any other evidence explaining the log, when it was completed, or by whom it was completed.

The plaintiff testified at her deposition that she was not a no call no show on February 6 and 7, 2016. She testified that she had received a phone call from one of the defendants' employees, whom she could not identify, telling her not to report to work on those dates because the defendants were overbooked with CNAs. She further testified that the defendants "constantly" overbooked employees and that she and other CNAs were called quite often and told not to report to work. She also testified that she told the director of nursing, the assistant director, and some of the other CNAs that she had been told not to report to work on February 6 and 7, 2016. She identified the director of nursing as "Valerie something." According to the plaintiff, Valerie said that she would look into it. The defendants submit-

ted no affidavit from Valerie or any other employee addressing the plaintiff's testimony that she was told not to report to work because Meriden was overbooked and that the plaintiff had reported the call to various employees of the defendants.

Although the plaintiff received clearance from her physician to return to work without restrictions on May 10, 2016, she has not sought work as a CNA. In fact, as of March 23, 2018, the date of her deposition, the plaintiff still believed that she had not recovered sufficiently to perform the essential functions of a CNA and she had no plans to return to that profession.

Following a January 31, 2017 release of jurisdiction notice from the Commission on Human Rights and Opportunities, the plaintiff, on March 25, 2017, commenced this action by service of process against the defendants. The plaintiff alleged the following causes of action against each defendant: disability discrimination (counts one and two), retaliation (counts three and four), failure to accommodate (counts five and six)—all in violation of General Statutes § 46a-60—and aiding and abetting against ICare.[5] The defendants responded with an answer and several special defenses.

On April 26, 2018, the defendants filed a motion for summary judgment on all counts of the plaintiff's complaint. In their motion, the defendants alleged that there were no disputed material facts, and that they were entitled to judgment as a matter of law because (1) the plaintiff could not establish a prima facie case to support any of her claims, and (2) her employment was terminated for a nondiscriminatory reason, namely, that she had failed to report to work on two scheduled days before her leave of absence without notifying them, in violation of their attendance policy. In support of their motion, the defendants submitted a memorandum of law, a portion of the plaintiff's sworn deposition, and various documents, including the defendants' attendance policy, disciplinary reports warning the plaintiff about her absenteeism and no call no shows, and Mari's February 17, 2016 certified letter that had been sent to the plaintiff by the defendants terminating her employment for "no call no show activity" on February 6 and 7, 2016.

The plaintiff objected to the defendants' motion, contending that there existed genuine issues of material fact. Attached to her memorandum of law in opposition to the defendants' motion for summary judgment was a portion of her deposition and various documents, including her request for leave, the defendants' "Daily eCentral Facility Call Out/Replacement Log," and the defendants' letter notifying her that her employment had been terminated "for cause."

Following a September 24, 2018 short calendar hearing, the court, on January 18, 2019, issued a memoran-

dum of decision in which it granted the defendants' motion for summary judgment. After setting forth the applicable law governing the plaintiff's claims and the standard for summary judgment, the court concluded that the plaintiff had set forth sufficient, albeit scant, evidence showing that her employment was terminated "under circumstances giving rise to an inference of discrimination." Specifically, the court referred to the plaintiff's deposition wherein she testified that she had requested and been granted time off to have knee surgery, but, just a few days before she was scheduled to begin her leave of absence, the defendants told her that she did not have to report to work, specifically on the February 6 and 7, 2016, due to overstaffing, and thereafter wrote her up as a no call no show for those days, using her nonattendance as a basis for the termination of her employment. The court also concluded, however, that the defendants had produced documents that demonstrated a legitimate nondiscriminatory reason for the termination of the plaintiff's employment, namely, that the plaintiff repeatedly had violated the defendants' absenteeism policy, and that the plaintiff had produced no evidence to indicate that the call she had received telling her not to report to work on February 6 and 7, 2016, was "motivated by illegal discriminatory bias." The court also focused on the fact that the plaintiff testified that she was treated the same as other employees while at work.

Additionally, the court concluded that the plaintiff could not establish a prima facie case of discrimination because she admitted in her deposition that she was not qualified for the position of CNA at the time she was terminated from her employment and that she has not been qualified since that time. As to the plaintiff's claim that the defendants failed to provide her with a reasonable accommodation, the court concluded that the plaintiff admitted that she had never requested an accommodation other than her medical leave, which the defendants granted. Insofar as the plaintiff argued that the defendants effectively denied her the accommodation of a leave of absence because they terminated the plaintiff's employment shortly after her leave commenced, the court concluded that the plaintiff readily admitted that she had not been able to perform the functions of her job since her surgery, with or without an accommodation. Finally, as to the plaintiff's claim of retaliation, the court concluded that because the defendants had advanced a nondiscriminatory reason for terminating the plaintiff's employment, namely, her repeated no call no shows, she could not establish a prima facie case of retaliation. Accordingly, the court rendered judgment in favor of the defendants. This appeal followed.

Initially, we set forth our standard of review. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book

§ 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The courts are in entire agreement that the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendants' motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Barbabosa* v. *Board of Education*, 189 Conn. App. 427, 436–37, 207 A.3d 122 (2019).

I

On appeal, the plaintiff claims that the court erred in rendering summary judgment on her disability discrimination claims because there are genuine issues of material fact as to whether the defendants' stated reason for its termination of the plaintiff's employment was pretextual and as to whether, at the time her employment was terminated, she was qualified, with or without a reasonable accommodation, to perform the essential functions of her job. We agree with the plaintiff.

"Under the Connecticut Fair Employment Practices Act . . . employers may not discriminate against certain protected classes of individuals, including those who are physically disabled." *Desrosiers* v. *Diageo North America, Inc.*, 314 Conn. 773, 775, 105 A.3d 103 (2014). Section 46a-60 (b) (1) provides in relevant part: "It shall be a discriminatory practice . . . [f]or an employer . . . to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . physical disability . . . ."

"The term pretext is most often used in the context of evaluating claims of discrimination based on adverse employment action under the burden shifting analysis enumerated by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802,

93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and adopted by this court in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990). Under this analysis, the employee must first make a prima facie case of discrimination. The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias. *Craine* v. *Trinity College*, 259 Conn. 625, 637, 791 A.2d 518 (2002).

"In order to establish a prima facie case, the complainant must prove that: (1) he [was] in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination. . . . *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 400, 880 A.2d 151 (2005). We note, additionally, that [t]he [fact finder's] disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and . . . upon such rejection, [n]o additional proof of discrimination is required . . . . *St. Mary's Honor Center* v. *Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)." (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 705–706, 900 A.2d 498 (2006). "[T]o defeat summary judgment [however] . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination . . . ." (Internal quotation marks omitted.) *Taing* v. *Camrac, LLC*, 189 Conn. App. 23, 28, 206 A.3d 194 (2019).

A

We turn first to the court's conclusion that, although the plaintiff produced sufficient evidence to show that her employment "was terminated under circumstances giving rise to an inference of discrimination," she failed to present evidence sufficient to create a genuine issue of material fact that the defendants' stated reason for terminating the plaintiff was pretextual. "To prove pretext, the plaintiff may show by a preponderance of the evidence that [the defendant's] reason is not worthy of belief or that more likely than not it is not a true reason or the only true reason for [the defendant's] decision to [terminate the plaintiff's employment] . . . . Of course, to defeat summary judgment . . . the plaintiff

is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." (Citation omitted; internal quotation marks omitted.) *Taing* v. *Camrac, LLC*, supra, 189 Conn. App. 28–29. "A plaintiff may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable [fact finder] could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." (Internal quotation marks omitted.) *Bombero* v. *Warner-Lambert Co.*, 142 F. Supp. 2d 196, 203 n.7 (D. Conn. 2000), aff'd 9 Fed. Appx. 38 (2d Cir. 2001).

The court correctly accepted, at the summary judgment stage, the plaintiff's sworn testimony that she was not a no call no show on February 6 and 7, 2016, but that she was told by the defendants not to report on those days. Nevertheless, the court found that there was no evidence that the plaintiff was treated differently than other employees, and, therefore, there was no evidence that the defendants' decision to terminate the plaintiff's employment was motivated by an illegal discriminatory bias.

The court's analysis misses the import of the plaintiff's claim. The plaintiff does not claim that she was discriminated against because of her disability while at work. Instead, her claim is that the defendants discriminated against her because she sought leave due to her disability. The record is devoid of any evidence, one way or the other, regarding how the defendants treated employees similarly situated to the plaintiff who sought leave to accommodate a disability. What the evidence, *viewed in the light most favorable to the plaintiff*, does reflect is that the plaintiff requested and was granted a leave of absence beginning on February 10, 2016, to have surgery to correct knee pain that arose from her disability. The plaintiff submitted evidence that, four days before her leave was scheduled to begin, the defendants called her to tell her not to report to work on February 6 and 7, 2016, because they were overbooked with CNAs on those days. Days later, while the plaintiff was recovering from surgery, an employee of the defendants called the plaintiff and informed her that her employment was being terminated for a no call no show on February 6 and 7, despite the fact that the defendants had told her not to report to work. Furthermore, the daily log kept by the defendants does not show that the plaintiff was a no call no show on February 7. Finally, the plaintiff testified at her deposition that it was not true that she had a previous no call no show on December 3, 2015, or that she was suspended for that alleged incident.[6] On the basis of this evidence, if believed, a jury reasonably could conclude that the

defendants told the plaintiff not to come to work on February 6 and 7, 2016, in order to create a pretext that she was a no call no show on those days so that they would have a ground to terminate her independent of her disability and her request for a leave of absence accommodation. Consequently, the court erred in concluding that there were no genuine issues of material fact regarding whether the defendants' stated reason for terminating the plaintiff's employment was pretextual.

B

We turn next to the court's conclusion that the plaintiff failed to establish a prima facie case of discrimination because she failed to establish a genuine issue of material fact as to whether she was qualified to perform the essential functions of her job, with the reasonable accommodation of a leave of absence, at the time the defendants terminated her employment.

To establish a prima facie case of employment discrimination pursuant to § 46a-60 (b) (1) on the basis of either a disability discrimination claim or a reasonable accommodation claim, a plaintiff must establish a common essential element, namely, that he or she is qualified for the position. See *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 415, 425–26, 944 A.2d 925 (2008).

"To be a qualified individual with a disability, a plaintiff must be able to perform the essential functions of his job, with or without a reasonable accommodation, *at the time of the adverse employment decision*." (Emphasis added.) *Tomick* v. *United Parcel Service, Inc.*, 135 Conn. App. 589, 611 n. 15, cert. denied, 305 Conn. 920, 47 A.3d 389 (2012).

In the present case, the court rested its conclusion that there was no genuine issue of material fact that the plaintiff was not qualified to perform the essential functions of her job on the plaintiff's deposition testimony. The plaintiff testified at her deposition, in March, 2018, that she was unable to perform the essential functions of a CNA following her surgery and that, two years after the surgery, she still was unable to perform those functions. On the basis of this testimony, the court concluded that "[t]he evidence shows that the plaintiff was unable to perform the essential functions of her job as a CNA at the time of the adverse employment action and remained unable to do so at least until the time of her deposition in March of 2018."

The problem with the court's analysis is that it is based on evidence of the plaintiff's inability to perform the essential functions of her job *after her employment was terminated*. At the time the defendants terminated her employment, the plaintiff had just undergone knee surgery. The purpose of the plaintiff's leave of absence was to permit her to have the surgery and to recover from it so that she could return to work. Put another way, the expectation of the parties was that the plaintiff

would be able to perform the essential functions of her job with the accommodation of a leave of absence related to her knee surgery. Thus, when the defendants terminated the plaintiff's employment, immediately after her surgery, it still was expected that she would remain qualified to perform the essential functions of her job, as she was before her surgery, if allowed the accommodation of time to recover. It was only after her employment was terminated, and she was unable to recover sufficiently, that it became clear that she would not be able to perform the essential functions of her job, even with the accommodation of the leave of absence.[7] Because, however, the determination of whether the plaintiff was qualified, with or without an accommodation, must be made at the time of termination, the fact that she was unqualified posttermination is irrelevant. The court's reliance on the plaintiff's post-termination condition for its conclusion that the plaintiff was unqualified to perform the essential functions of her job *at the time that she was terminated*, therefore, was improper, because all of the parties anticipated that she again would be qualified after her accommodation.[8] Consequently, there is a genuine issue of material fact as to whether the plaintiff was qualified to perform the essential functions of her job, with the reasonable accommodation of a leave of absence, at the time the defendants terminated her employment.

## II

We next consider the court's rejection of the plaintiff's claim that the defendants failed to provide her with a reasonable accommodation. The plaintiff claims that this was error, because, although the defendants granted her request for a leave of absence to have and recover from knee surgery, there is a genuine issue of material fact as to whether they then fired her for taking that accommodation.

"In order to establish a prima facie case for a reasonable accommodation claim, the plaintiff must produce enough evidence for a reasonable jury to find that (1) he is disabled within the meaning of the [statute], (2) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff's] disability, did not reasonably accommodate it." (Internal quotation marks omitted.) *Barbabosa* v. *Board of Education*, supra, 189 Conn. App. 437–38.

The court accurately set forth the parties' respective positions regarding the plaintiff's claim. "The defendant argues that there is no evidence in the record that the plaintiff requested a reasonable accommodation, other than time off for her surgery, which was granted . . . . The plaintiff, on the other hand, contends that the defendants effectively denied the leave of absence accommodation because the defendants terminated the plaintiff shortly after her leave commenced." The court did not

address these respective arguments but, instead, rendered summary judgment because the plaintiff failed to produce evidence "that the leave of absence accommodation would have ever allowed her to perform the essential functions of the job." As it did with the plaintiff's discrimination claims, the court focused on the plaintiff's deposition testimony that "she was physically unable to work even after the alleged three month period requested for the leave of absence."

As was true of its analysis of the plaintiff's discrimination claim, the court incorrectly focused on the plaintiff's qualifications *after* the defendants terminated her employment. Had the defendants terminated the plaintiff's employment at the end of the three month leave of absence, her inability to perform the essential functions of her job at that time would be highly relevant, and, very likely, dispositive of her claim. However, the defendants terminated her employment shortly after her leave of absence had begun. At that point, it was expected, although admittedly not certain, that the plaintiff would be able to return to work following the leave of absence accommodation. Thus, at the time of her termination from employment, there was at least a genuine issue of material fact as to whether the plaintiff could perform the essential functions of her job with the accommodation of a leave of absence to have and recover from surgery to her right knee. Consequently, the court erred in rendering summary judgment for the defendants on the plaintiff's reasonable accommodation claims.

### III

Finally, the plaintiff claims that the court erred in rendering summary judgment for the defendants on her retaliation claims. We decline to review this claim because it has been inadequately briefed. The appellant's brief makes only passing references to "retaliation" in its statement of issues, introduction and in a heading in the argument section of the brief. The brief is devoid of any discussion of the elements of such claims, the law governing such claims, or the trial court's analysis of the plaintiff's claims. In fact, the section of the appellant's brief which, purportedly, was going to address the retaliation claims, addresses only the plaintiff's disability discrimination claims and asks only that the court's decision rendering summary judgment on the disability claims be reversed.

"We are not required to review issues that have been improperly presented to this court through an inadequate brief . . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs . . . . The parties may not merely cite a legal principle without

analyzing the relationship between the facts of the case and the law cited." (Citation omitted; internal quotation marks omitted.) *State* v. *Michael T.*, 194 Conn. App. 598, 617, 222 A.3d 105 (2019). Accordingly, we decline to review this claim.

The judgment is reversed as to counts one and two, which allege discrimination on the basis of disability, and as to counts five and six, which allege a failure to accommodate, and the case is remanded for further proceedings on those counts; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] In her complaint, the plaintiff also brought one count of "aiding and abetting" against ICare. She raises no claim of error on appeal in regard to the court rendering judgment in favor of ICare on that count.

[2] It is not disputed that the plaintiff has a condition known as Turner Syndrome.

[3] The record is unclear as to the date of the plaintiff's surgery. The plaintiff testified at her deposition that she could not recall the exact date of her surgery, but it was "something like" February 10, 2016. She further testified that she was verbally informed of her termination by a phone call she received while still under the effects of anesthesia. Finally, a February 17, 2016 letter from one of Meriden's employees stated that it was confirming her telephone discussion with the plaintiff that day. Thus, it appears from the record that the plaintiff's surgery happened no earlier than February 10, 2016, when her leave of absence started, and no later than February 17, 2016.

[4] Mari's letter does not identify the first no call no show occurrence. The evidence submitted in support of the defendants' motion for summary judgment includes three corrective action records relating to the plaintiff's attendance. Only one of the records, dated December 17, 2015, indicates that the plaintiff was a no call no show. That record reflects that the plaintiff received a one day suspension due to being a no call no show on December 3, 2015. The corrective action record prepared in connection with the plaintiff's termination also states that the plaintiff was a no call no show on December 3, 2015. The plaintiff disputes the accuracy of these records. She testified at her deposition that she had the day off on December 3, 2015, so she was not a no call no show on that date. She further testified that she was never suspended and noted that she did not sign the record where it calls for the employee's signature. On the line where the plaintiff would have signed, someone handwrote the words "via telephone." The plaintiff denied ever having such a phone call with an employee of one of the defendants about the December 3, 2015, alleged no call no show. Despite the plaintiff's deposition testimony, the defendants provided no affidavits from anyone who completed the record, who spoke to the plaintiff about the alleged no call no show, or who could confirm that the plaintiff, in fact, was suspended.

[5] See footnote 1 of this opinion.

[6] The court also noted that the defendants presented evidence that the plaintiff violated their absenteeism policy on at least three separate occasions. Any reliance on those occasions to support the defendants' motion for summary judgment is misplaced because the defendants' stated reason for terminating the plaintiff's employment was that her failure to come to work on February 6 and 7, 2016, was her second no call no show incident, with the first such incident allegedly having occurred on December 3, 2015. On the basis of the plaintiff's deposition testimony, there is a genuine issue of material fact as to whether she was a no call no show on any of those dates. Any other attendance issues, not being the stated reason for the defendants' termination of the plaintiff's employment, are irrelevant to the consideration of the defendants' motion.

[7] The plaintiff argues that there is a genuine issue of material fact as to whether she was qualified after the defendants terminated her employment because the plaintiff's treating physician cleared her to return to work as of May 10, 2016. Putting aside the relevance of her physician's opinion, given the plaintiff's repeated admissions that she can no longer perform the essential functions of a CNA, such evidence does not address directly whether the plaintiff was qualified in February, 2016, when the defendants

terminated her employment.

[8] The court and the defendants relied on two cases that made references to a plaintiff's posttermination deposition testimony that they remained unable to perform the essential functions of their jobs at the time of their depositions: *Desmond* v. *Yale-New Haven Hospital, Inc.*, 738 F. Supp. 2d 331 (D. Conn. 2010), and *Daley* v. *Cablevision Systems Corp.*, United States District Court, Docket No. 12-CV-6316 (NSR) (S.D.N.Y. March 7, 2016), aff'd, 675 Fed. Appx. 97 (2d Cir. 2017). Such reliance is misplaced. Although the court in each case made reference to the plaintiff's condition at the time of his or her deposition, each court's decision was based on the plaintiff's ability to perform the essential functions of his or her job *at the time of his or her termination*. In *Desmond*, the plaintiff's employment was terminated only after the plaintiff received an extended leave of absence following surgery to address her disability and after a medical report indicated that, despite the leave of absence, she remained unable to perform the essential functions of her job. *Desmond* v. *Yale-New Haven Hospital, Inc.*, supra, 738 F. Supp. 2d. 341. Furthermore, she did not argue that the defendant failed to accommodate her with a leave of absence but, rather, that it should have provided either a second employee to do the physical parts of her job that she was unable to perform; id., 348–49; or it should have provided her with medical treatment to overcome her disability. Id., 350. The court concluded that neither proposed accommodation was reasonable as a matter of law. Id., 349–50, 352. Similarly, in *Daley*, the plaintiff's employment was terminated after he had received multiple leaves of absences to address his disability, but was still unable to perform the essential functions of his job after the leaves of absence ended. *Daley* v. *Cablevision Systems Corp.*, supra, United States District Court, Docket No. 12-CV-6316 (NSR). The plaintiff also refused to pursue less physically demanding positions that he could have performed with his disability. Id. In this case, the defendants do not argue that the plaintiff's request for a leave of absence as an accommodation was unreasonable. Furthermore, unlike in *Desmond* and *Daley*, the plaintiff's employment was terminated *during* the reasonable accommodation, not after it had expired.