******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DIANE LUTH *v.* OEM CONTROLS, INC.
(AC 43702)

Bright, C. J., and Elgo and Alexander, Js.

*Syllabus*

The plaintiff sought to recover damages for gender discrimination and retaliatory discharge in violation of statute (§ 46a-51 et seq.) as a result of the termination of her employment by the defendant. The plaintiff claimed that the defendant paid her less than it paid two male employees, whose job responsibilities she recognized were different from her own. After the defendant began to experience financial difficulties, the plaintiff was laid off, and her duties were absorbed by other employees, including one of the two male employees she claimed had been paid more than her. The trial court granted the defendant's motion for summary judgment and rendered judgment for the defendant, from which the plaintiff appealed to this court. *Held* that the judgment of the trial court was affirmed, and because the court thoroughly analyzed the legal issues in concluding that the defendant was entitled to judgment as a matter of law, this court adopted the trial court's comprehensive and well reasoned decision as a proper statement and analysis of the applicable law on the issues presented.

Argued February 8—officially released April 6, 2021

*Procedural History*

Action to recover damages for, inter alia, alleged gender discrimination, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *Stevens, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Zachary T. Gain*, with whom, on the brief, was *James V. Sabatini*, for the appellant (plaintiff).

*Jody N. Cappello*, with whom was *Sidd Sinha*, for the appellee (defendant).

*Opinion*

PER CURIAM. In this action, brought pursuant to the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq., the plaintiff, Diane Luth, appeals from the summary judgment, rendered by the trial court, in favor of her former employer, the defendant, OEM Controls, Inc. On appeal, the plaintiff claims that the court erred in rendering summary judgment on her two count complaint sounding in gender discrimination and retaliatory discharge. We affirm the judgment of the trial court.

The following facts and procedural history are revealed by the record. The plaintiff, who is a woman, began working for the defendant in January, 1996, as a sales administrator. At approximately the same time, Jay Monahan also began working for the defendant. According to the plaintiff, Monahan helped to establish the data delivery unit of the company; "he was the sales person going out there. And then—he's the one [who] started installing." Monahan was involved with engineering designs, had engineering ability that permitted him to assist with software and hardware issues, and he also focused on sales. The plaintiff believed that Monahan was paid more than she was paid. Monahan revealed at his deposition that he had an annual base salary of less than $100,000, which was augmented by commissions on sales.

In the years that followed, the plaintiff was promoted to various positions with the defendant, and, at some point after 2004, she was promoted to implementation manager in the data delivery department, where her annual salary increased from less than $50,000 to between $88,000 and $92,000. The plaintiff and Monahan shared certain roles, but Monahan was responsible for handling the technical aspect of the projects, including making sales, while the plaintiff handled customer related issues but not sales. The plaintiff had wanted to move to New Hampshire and work for the defendant remotely for quite some time. The defendant, however, was reluctant to permit the plaintiff to do so and did not give her an answer. Finally, in or about 2011, the defendant approved the plaintiff's request, and she moved to New Hampshire, where she worked remotely for the defendant. She still was expected to work in Connecticut every six to ten weeks or so.[1]

In 2015, the defendant began to experience financial difficulties, of which the plaintiff was aware. The defendant implemented layoffs and a freeze on raises. In an attempt to increase sales, the defendant hired a male, Mick Lauer, a former customer, whose salary consisted of a base salary of approximately $125,000 plus commission, generally totaling approximately $160,000. The plaintiff believed Lauer's salary was $170,000. The plaintiff complained to her manager, Samuel Simons, about

the compensation of Monahan and Lauer. Simons conducted a review of the salaries and determined that the employees were being paid appropriately. The plaintiff recognized that the job responsibilities of Monahan and Lauer were different from her own job responsibilities, including the fact that Monahan worked on and developed hardware, trained clients, and made sales, and that Lauer primarily worked in sales. The plaintiff often referred to Monahan and Lauer collectively as the "sales team." Although the plaintiff was not subject to the initial round of layoffs in 2015, the defendant laid off four additional people in October, 2016, including three men and the plaintiff. Many of those laid off in both rounds of layoffs had been with the defendant for more than twenty years. The plaintiff's job title was eliminated and her duties were absorbed by others, including Monahan.

The plaintiff initiated a complaint with the Commission on Human Rights and Opportunities, where she received a release of jurisdiction on August 31, 2017, and then commenced an action in the Superior Court. On December 3, 2018, the plaintiff filed a revised complaint against the defendant, alleging one count each of gender discrimination and retaliatory discharge. On April 15, 2019, the defendant filed a motion for summary judgment, attaching to its accompanying memorandum of law various documents in support thereof, including portions of the depositions of the plaintiff, Simons, Monahan, and Lauer. The plaintiff filed a memorandum in opposition, attaching portions of the same depositions, among other things. On July 22, 2019, the trial court heard oral argument on the motion for summary judgment.[2]

On December 6, 2019, the court, *Stevens, J.*, issued a memorandum of decision on the defendant's motion for summary judgment. In its decision, the court set forth the uncontested facts, the plaintiff's claims, and the relevant legal authority, followed by a thorough analysis of the legal issues presented. The court then concluded that the defendant was entitled to judgment as a matter of law. We carefully have reviewed the record, the parties' briefs, and their oral argument before this court. Applying the well established principles that govern our review of a court's decision to grant a motion for summary judgment in cases alleging violations of the act; see, e.g., *Stubbs* v. *ICare Management, LLC*, 198 Conn. App. 511, 520–22, 233 A.3d 1170 (2020); we conclude that the judgment of the trial court should be affirmed. We adopt the trial court's comprehensive and well reasoned decision as providing a proper statement and analysis of the applicable law on the issues presented. See *Luth* v. *OEM Controls, Inc.*, Superior Court, judicial district of Ansonia Milford, Docket No. CV-17-6025657-S (December 6, 2019) (reprinted at 203 Conn. App.     ,     A.3d     ). It would serve no useful purpose for us to repeat the thorough

discussion contained therein. See, e.g., *State* v. *Sebben*, 201 Conn. App. 376, 380, 243 A.3d 365 (2020); *Gawlik* v. *Semple*, 197 Conn. App. 83, 86, 231 A.3d 326, cert. denied, 335 Conn. 953, 238 A.3d 730 (2020), cert. denied,    U.S.    ,    S. Ct.    ,    L. Ed. 2d    (2021); *Samakaab* v. *Dept. of Social Services*, 178 Conn. App. 52, 54, 173 A.3d 1004 (2017); *Hayes* v. *Yale-New Haven Hospital*, 82 Conn. App. 58, 60, 842 A.2d 616 (2004).

The judgment is affirmed.

[1] When asked during her deposition whether she ever had refused to attend these in-person meetings or any telephone meetings, the plaintiff stated that she could not recall.

[2] The plaintiff has not provided this court with a copy of that transcript. We conclude, however, that the transcript is not crucial to our consideration of her appeal.

————————————————