******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SHARON FIVEASH *v.* CONNECTICUT CONFERENCE OF MUNICIPALITIES ET AL.

# SHARON FIVEASH *v.* JOSEPH DELONG ET AL.
## (AC 44824)

Alvord, Elgo and Clark, Js.

*Syllabus*

The plaintiff, a director of member services at the defendant C Co., sought to recover damages from various defendants for alleged gender discrimination and retaliation in violation of a provision (§ 46a-60) of the Connecticut Fair Employment Practices Act. A few years after the plaintiff was hired, several employees in her department resigned while she was the director, and a few of those employees expressed displeasure with working for her and voiced complaints about her during exit interviews. In response, the defendant D, the executive director of C Co., instructed B, the director of human resources of C Co., to conduct an investigation into the allegations, which resulted in the termination of the plaintiff's employment. The plaintiff then commenced an action against C Co. and a related entity and a separate action against D, B and the defendant T, the deputy director of C Co., with whom the plaintiff did not get along. The two actions were consolidated for the purposes of discovery, pretrial pleadings and trial. Subsequently, the defendants filed a motion for summary judgment in each case, arguing that there were no genuine issues of material fact that would permit an inference of gender discrimination or, in the alternative, that her termination was a pretext for gender discrimination. The trial court granted the defendants' motion, and the plaintiff appealed to this court. *Held* that the trial court properly granted the defendants' motion for summary judgment in each case, as no reasonable jury could have concluded that the plaintiff's termination was motivated in whole or in part by gender discrimination: the plaintiff did not demonstrate the existence of a genuine issue of material fact as to whether the defendants' legitimate, nondiscriminatory justification for her discharge, namely, repeated charges of mismanagement of employees and failure to respect authority as detailed in the report of the investigation, was a pretext for unlawful discrimination, and the record was devoid of any evidence that the plaintiff engaged in a protected activity giving rise to a claim of retaliation.

Argued May 11—officially released October 4, 2022

*Procedural History*

Actions to recover damages for alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of Hartford where the matters were consolidated; thereafter, the court, *Moukawsher, J.*, granted the defendants' motion for summary judgment in each case, from which the plaintiff appealed to this court. *Affirmed.*

*James H. Howard*, for the appellant (plaintiff in each case).

*Rachel V. Kushel*, for the appellees (defendants in each case).

*Opinion*

PER CURIAM. In these employment discrimination actions, the plaintiff, Sharon Fiveash, appeals from the summary judgment rendered in favor of the defendants, Connecticut Conference of Municipalities (CCM), Connecticut Interlocal Risk Management Agency, Inc. (CIRMA), Faith Brooks, Joseph DeLong, and Ronald W. Thomas. On appeal, the plaintiff claims that the court erred in concluding that there were no genuine issues of material fact regarding the plaintiff's claims of gender discrimination and retaliation. We disagree and, accordingly, affirm the judgments of the trial court.

The following facts, viewed in the light most favorable to the plaintiff, and procedural history are revealed by the record. CCM is Connecticut's statewide association of towns and municipalities. CIRMA is a separate legal entity through which CCM provides insurance services to its members.

The plaintiff was hired on or about May 5, 2015, as director of member services at CCM. Throughout the plaintiff's tenure with CCM, she received positive employment reviews. In 2018, however, several employees in the plaintiff's department resigned while she was the director. During exit interviews, a few of those employees expressed displeasure with working for the plaintiff and voiced complaints about her. In response to these negative complaints, DeLong, the executive director of CCM, instructed Brooks, the director of human resources, to conduct an investigation into the allegations coming from the member services department. The plaintiff was notified by letter of the workplace complaints and the initiation of an investigation and was placed on a paid suspension pending the completion of the investigation. The investigation focused on, inter alia, whether the plaintiff abused her authority, micromanaged, created an unhealthy work environment, and/or failed to respect authority. Following the investigation, Brooks issued an investigation report, which substantiated many of the allegations against the plaintiff. The plaintiff's employment with CCM was terminated on October 19, 2018.

In June, 2019, the plaintiff commenced an action against Brooks, DeLong, and Thomas, who served as deputy director of CCM, claiming that they aided and abetted gender discrimination against her in violation of General Statutes § 46a-60 (b) (5).[1] In August, 2019, she commenced a separate action against CCM and CIRMA claiming that they committed workplace discrimination against her on the basis of gender in violation of § 46a-60 (b) (1)[2] and retaliated against her in violation of § 46a-60 (b) (4).[3] On October 2, 2019, the plaintiff filed a motion to consolidate, requesting that the court consolidate the actions for purposes of discovery, pretrial pleadings and trial, explaining that the indi-

vidual defendants in the first action are the officers and/or employees of the entities that are the defendants in the second action. On November 13, 2019, the court, *Sheridan, J.*, granted the motion.

On March 19, 2021, following discovery, the defendants filed a motion for summary judgment in each case, arguing that there were no genuine issues of material fact that would permit an inference of gender discrimination, or, in the alternative, that her termination was a pretext for gender discrimination. On May 11, 2021, the plaintiff filed her opposition to the defendant's motion for summary judgment.

In a memorandum of decision dated June 22, 2021, the court, *Moukawsher, J.*, granted the defendants' motion for summary judgment. The court focused its attention on the final step of the *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) burden shifting framework, evaluating whether CCM's articulated, nondiscriminatory reason for the plaintiff's termination was pretextual.[4] It stated: "CCM says [it] fired [the plaintiff] because she micromanaged and bullied the employees she supervised. More than one of them said so in exit interviews. There was an investigation. The complaints were deemed well-founded. [The plaintiff] was fired, and CCM cited this bullying as the reason.

"[The plaintiff] insists this isn't the real reason. She says the real reason was because a supervisor . . . Thomas, didn't like her because she is a woman and that this led to her being fired. In support she cites a variety of indirect evidence—and, yes, indirect evidence is not only enough, it is often all there is.

"[The plaintiff] says her office was smaller than the offices given to male supervisors and she was paid less. She says there are too few women in proportion to men at CCM. While the sister organization [CIRMA] she is suing has women in leadership, she was the only woman among her peers at CCM. She says a subordinate employee not under her charge once called her a 'bitch.' She claims the head of CCM joked at a meeting that she was a 'slave driver' to her staff. [The plaintiff's] expert says . . . Brooks did a poor job looking into the complaints and suggests she was swayed by Thomas. [The plaintiff] says Thomas was friendly to the male supervisors and unfriendly to her, unreasonably interfering with her job duties. She says Thomas wouldn't answer her emails. Thomas complains she wouldn't answer his. The parties offered evidence of arguments between the two via email.

"All of this must be looked at through the lens . . . for summary judgment motions. . . . From what has been submitted, should [the plaintiff] get to a jury with the question whether her gender was a substantial factor in her firing? [The plaintiff] has described conditions

at CCM that are different for her than men in her office. But to get to a jury these things have to be at least substantially linked with the decision to fire her. It isn't enough that they existed. They have to be a substantial cause of her firing. And that's where the trouble is. The court doesn't see anything a jury might latch onto to connect the two.

"The evidence about Thomas in particular points unmistakably to a different problem. The submissions of both sides document that when [the plaintiff] started her job she thought she would report solely to the head of CCM . . . DeLong. But when she got the paperwork after arriving for work it showed her reporting to . . . Thomas. She complained immediately, and DeLong immediately temporized, explaining that she would report to Thomas for administrative matters and to DeLong on matters of substance.

"Thomas plainly didn't think so. He repeatedly sought to assert control over [the plaintiff] and [the plaintiff] repeatedly fought back, appealing to DeLong and DeLong continued to temporize. While Thomas said many positive things about [the plaintiff] in her reviews, more than once he complained that she wouldn't recognize his authority. He continued to assert it. She continued to combat it. If there was bad blood between the two, the only evidence is that it was about this issue.

"The uncontradicted reality of this dispute is fatal also to [the plaintiff's] secondary claim of retaliation. The parties agree that the same case law applies to the § 46a-60 (b) (4) claim that she was fired for complaining about Thomas' gender animus. But the evidence shows that the complaints were solely about the supervision controversy, particularly the July and August, 2015 emails [the plaintiff] points to as evidence of her allegedly protected complaints. No evidence suggests, until she faced firing, that she directly or indirectly complained to DeLong or anyone else about gender animus in any way at any time.

"As for the other indirect evidence, [the plaintiff] hasn't offered any evidence that Thomas picked her office, set her salary, and picked the rest of the staff she complains of as being too freighted with men. Instead, she shifts back and forth pointing out these circumstances, suggesting an institutional problem but then pointing to Thomas without connecting him as the decision maker who created the alleged institutional problems. With equal inconsistency she points to DeLong as her protector in some places and then without explanation lumps him into the problem.

"As for the investigation, [the plaintiff] hired an expert to scrutinize the process, suggesting an outside investigator would have been more neutral and that . . . Brooks sometimes asked the wrong questions of some and not all of the questions she should have of oth-

ers.

"Again, nothing about what Brooks did is linked to gender as being [a] substantial factor in [the plaintiff's] firing. Nothing about the flaws suggest that she was fired because of the flaws rather than because of the repeated charges of mismanagement revealed by those [the plaintiff] supervised. There is only the murky suggestion that it is somehow part of an overall gender biased scheme orchestrated by Thomas without anything a jury could find to support that link.

"There just isn't enough here to recognize a disputed issue of material fact between the parties. Viewing everything most favorably to [the plaintiff], avoiding credibility judgments, applying only the need to make gender a substantial factor, a reasonable jury would still be missing the most important thing. It would be missing any evidence to connect the circumstances [the plaintiff] points out with the decision to fire her. Indeed, the evidence shows that her problem with Thomas had everything to do with her refusal to submit to his supervision instead of DeLong's—a very solid explanation for the trouble between them and one that appears on the scene without anything to link it to gender. Likewise, there is evidence that complaints and an investigation led to the decision to fire her. . . . Perhaps a silken thread here would be enough to mean a jury not a judge should decide the matter. But the thread here doesn't run." (Citations omitted; emphasis omitted; footnotes omitted.) Accordingly, the court granted "CCM summary judgment because on this record no reasonable jury could find for her on her claim that it discriminated or retaliated against her. All of [the plaintiff's] claims against the other defendants—even assuming they are properly joined—similarly rely on the same gender and retaliation claims. Since these claims fail, the court grants all the remaining defendants summary judgment as well." This appeal followed.

On the basis of our careful review of the record, the parties' briefs, and their oral arguments before this court, and applying the well established principles that govern our review of a court's decision to render summary judgment in cases alleging violations of the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq.; see, e.g., *Stubbs* v. *ICare Management, LLC*, 198 Conn. App. 511, 520–22, 233 A.3d 1170 (2020); we conclude that the judgment of the trial court in each case should be affirmed. We agree with the court that the plaintiff has not demonstrated the existence of a genuine issue of material fact as to whether the defendants' legitimate, nondiscriminatory justification for her discharge was a pretext for unlawful discrimination.[5] See *Luth* v. *OEM Controls, Inc.*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-17-6025657-S (December 6, 2019) (reprinted at 203 Conn. App. 673, 686, 252 A.3d 412) (granting sum-

mary judgment in favor of defendant when "the defendant has provided a nondiscriminatory reason for the plaintiff's termination, and the plaintiff has failed to provide any sufficient evidence indicating that these reasons were pretextual"), aff'd, 203 Conn. App. 673, 252 A.3d 406 (2021). We similarly agree with the trial court that the record is devoid of any evidence that the plaintiff engaged in a protected activity giving rise to a claim of retaliation. See *Agosto* v. *Premier Maintenance, Inc.*, 185 Conn. App. 559, 587–88, 197 A.3d 938 (2018) (affirming grant of summary judgment in favor of defendant when allegations and facts of case "do not constitute a protected activity" and when plaintiff failed to establish that defendant knew that plaintiff "was engaged in a protected activity").

On the record before us, no reasonable jury could conclude that the plaintiff's termination was motivated in whole or in part by gender discrimination. See *Taing* v. *CAMRAC, LLC*, 189 Conn. App. 23, 28, 206 A.3d 194 (2019) (to defeat summary judgment motion, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination" (internal quotation marks omitted)). We therefore conclude that the court properly granted the defendants' motion for summary judgment in each case.

The judgments are affirmed.

[1] General Statutes § 46a-60 provides in relevant part: "(b) It shall be a discriminatory practice in violation of this section . . . (5) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so . . . ."

[2] General Statutes § 46a-60 provides in relevant part: "(b) It shall be a discriminatory practice in violation of this section . . . (1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability, physical disability, including, but not limited to, blindness or status as a veteran . . . ."

Although the legislature has amended § 46a-60 (b) (1) since the events underlying the present case; see Public Acts 2021, No. 21-69, § 1; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] General Statutes § 46a-60 provides in relevant part: "(b) It shall be a discriminatory practice in violation of this section . . . (4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

[4] Under the *McDonnell Douglas Corp.* burden shifting analysis, the employee must "first make a prima facie case of discrimination. . . . The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. . . . The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal

discriminatory bias." (Internal quotation marks omitted.) *Rossova* v. *Charter Communications, LLC*, 211 Conn. App. 676, 684–85, 273 A.3d 697 (2022).

In the present case, the court appears to have assumed, without deciding, that the plaintiff established a prima facie case of gender discrimination. It also concluded that the defendants had satisfied their burden of articulating a legitimate, nondiscriminatory reason for the plaintiff's termination. The court thus focused its analysis on whether the defendants' proffered reason for the termination was pretextual, concluding that it was not.

[5] The plaintiff argues, inter alia, that the court erred in rendering summary judgment by "permitting the defendants to use hearsay evidence to proffer a 'legitimate reason' for the adverse employment action." To that end, it appears that she is arguing that the sole evidence that the defendants rely on to articulate a nondiscriminatory reason for her termination is the investigation report, which, in her view, is impermissible hearsay evidence. This argument lacks any merit and warrants little discussion. First, when the plaintiff brought her hearsay concerns to the court's attention, the court made clear that it would "not consider the investigation documents for the truth of the matters asserted in them but only to show that steps were taken to investigate claims against [the plaintiff] and that the investigation conclusion was linked to the decision to fire [the plaintiff]." Second, aside from the investigation report, both DeLong and Brooks, the decision maker and investigator, respectively, testified in depositions about what prompted the investigation, the investigation itself, and the reasons for her termination. Lastly, the plaintiff herself submitted and relied upon the investigation report in opposition to the defendants' motion for summary judgment. We therefore reject the plaintiff's argument.

---