******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STUART HANKE *v.* ELECTRIC BOAT CORPORATION
## (AC 48297)

Suarez, Clark and Wilson, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment for the defendant, rendered following its grant of the defendant's motion for summary judgment on the plaintiff's complaint, which alleged, inter alia, employment discrimination based on disability. The plaintiff claimed, inter alia, that the court improperly concluded that he failed to make out a prima facie case of discrimination as to any of the three counts of his complaint. *Held*:

The trial court properly granted the defendant's motion for summary judgment on the plaintiff's claim of disability discrimination, as there was no genuine issue of material fact that, at the time the plaintiff's employment was terminated, he was not qualified to perform the essential functions of his position as an engineering supervisor with or without a reasonable accommodation.

The plaintiff could not prevail on his claim that the defendant failed to provide him with a reasonable accommodation for his disability, as the trial court correctly determined that he failed to initiate the required interactive process with the defendant to request such an accommodation and had failed to request any such accommodation.

The trial court properly rendered summary judgment for the defendant on the plaintiff's claim that the defendant retaliated against him for requesting a leave of absence as a reasonable accommodation for his disability, as there was no evidence that the plaintiff had requested a reasonable accommodation.

Argued December 4, 2025—officially released April 7, 2026

*Procedural History*

Action to recover damages for, inter alia, the defendant's alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Chadwick, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed*.

*James V. Sabatini*, for the appellant (plaintiff).

*Danielle Jurema Lederman*, with whom, on the brief, were *Tracy Thomas Boland* and *Robert G. Young*, pro hac vice, for the appellee (defendant).

*Opinion*

CLARK, J. The plaintiff, Stuart Hanke, appeals from the summary judgment rendered by the trial court in favor of the defendant, Electric Boat Corporation, with respect to his claims brought under the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq. The plaintiff's complaint asserted three separate counts against the defendant for violations of CFEPA: (1) that the defendant terminated his employment on the basis of his disability; (2) that the defendant failed to provide a reasonable accommodation for his disability; and (3) that the defendant retaliated against him for requesting a reasonable accommodation for his disability. On appeal, the plaintiff claims that the court improperly rendered summary judgment for the defendant on all three counts of his complaint. Specifically, the plaintiff claims that the court improperly concluded that he failed to make out a prima facie case of discrimination on any of the three counts of his complaint because there were no genuine issues of material fact that (1) he was not qualified to perform the essential functions of his job at the time his employment was terminated, (2) he failed to request a reasonable accommodation in the form of a request for a medical leave of absence, and (3) he failed to demonstrate that he had engaged in a protected activity. We affirm the judgment of the trial court.

The following facts, gleaned from the record before the trial court on the summary judgment motion and viewed in the light most favorable to the plaintiff as the nonmoving party, and procedural history are relevant to our analysis. In 2011, the defendant hired the plaintiff. He eventually became an engineering supervisor with the defendant, a position that he held until his employment was terminated. As an engineering supervisor, the

plaintiff managed a team of engineers and reported to Steven Moffett, the manager of engineering.

In May, 2019, the plaintiff arrived late to a meeting and was observed dozing off during that meeting by Moffett and other employees of the defendant. Moffett reported the incident to human resources representative Cristine Troiano. On May 24, 2019, Moffett and Troiano met with the plaintiff to discuss the incident. During that meeting, the plaintiff admitted that he had been sleeping during the prior meeting that month. He did not disclose to Moffett or Troiano any medical condition or request any accommodation. Instead, he attributed the incident to ongoing family issues. The plaintiff concedes that sleeping during work hours is a violation of the defendant's policy.

After the meeting with Moffett and Troiano, the defendant issued the plaintiff a letter of reprimand for sleeping at work in violation of company rules and regulations. The reprimand included a five day suspension from work. The plaintiff received no further discipline as a result of the incident.[1]

In September, 2019, a significant number of employees whom the plaintiff supervised announced their intention to resign, resulting in a much higher attrition rate than that of the other teams that reported to Moffett. The plaintiff concedes that the high attrition rate was a cause for concern and that he discussed the attrition problem with Moffett. Because of the high attrition rate, Moffett interviewed members of the plaintiff's team and concluded that the plaintiff's performance as a supervisor was the cause of the high rate of attrition. Moffett relayed his conclusions regarding the plaintiff's performance to Troiano. Moffett and Troiano scheduled

---

[1] On June 21, 2019, the plaintiff was diagnosed with sleep apnea. The plaintiff never requested an accommodation due to his sleep apnea diagnosis. Nor did the plaintiff request that his suspension for the sleeping incident be rescinded or withdrawn after he had been diagnosed with sleep apnea. Moreover, during his deposition, the plaintiff agreed that he was deemed eligible for short-term disability benefits for stress and anxiety but not for his sleep apnea.

a meeting with the plaintiff for September 20, 2019, for the purpose of discussing with him his performance as a supervisor and the attrition rate of his team. In advance of the meeting, Moffett informed the plaintiff that he would be required to attend the meeting with Moffett and human resources staff and that, at that meeting, he would be asked to step down from his supervisor position into an engineering specialist role while retaining his supervisor pay.

As a result of learning about the meeting that was to take place on September 20, 2019, the plaintiff experienced stress and anxiety. The plaintiff ultimately did not attend the scheduled meeting on September 20, 2019, and did not return to work after that date. He subsequently applied for short-term disability benefits due to stress and anxiety.

The defendant uses third-party administrators to manage its employees' short-term and long-term disability benefits. The defendant uses Sedgwick to administer its short-term disability benefits. Employees apply directly to Sedgwick for short-term disability benefits. Sedgwick determines eligibility and approval of short-term disability benefits and notifies the defendant of its determination. The plaintiff's short-term disability benefits were initially approved through October 21, 2019, and were extended multiple times thereafter.

During the time that the plaintiff was out of work on short-term disability, the defendant remained in contact with him and communicated with him about his return to work. Troiano also contacted the plaintiff via email to notify him of the process for requesting a leave of absence. The plaintiff did not utilize that process and never requested a leave of absence.

Under the defendant's short-term and long-term disability policy, an employee who exhausts his or her short-term disability benefits must apply for long-term disability benefits "[u]nless return to work is imminent . . . based on a medically documented [return to work]

date . . . ." The maximum short-term disability benefit is twenty-six weeks. The Hartford is the third-party benefits administrator for the defendant's long-term disability benefits. The defendant's policy and practice is to administratively terminate the employment of an employee who is approved for long-term disability. The defendant has no power to override a determination made by Sedgwick or The Hartford regarding an employee's eligibility for disability benefits. For the plaintiff to be eligible for short-term or long-term disability benefits, the administrator for the respective benefits program needed to determine that he was unable to work during the period for which he was approved for benefits.

By March 19, 2020, the plaintiff had exhausted his twenty-six weeks of short-term disability benefits. The plaintiff applied for long-term disability benefits and was notified of his approval on or about April 14, 2020. In accordance with its policy, also on or about April 14, 2020, the defendant informed the plaintiff that his employment was to be administratively terminated effective April 30, 2020, due to his approval for long-term disability benefits. At no time prior to or after his approval for long-term disability benefits and the notice of his administrative termination did the plaintiff communicate to the defendant an intent to return to work or an expected date of return. The plaintiff's employment was terminated on April 30, 2020. As of the date of his termination, the plaintiff remained unable to work. In June, 2020, the plaintiff was medically cleared to return to work without restriction.

The plaintiff filed a complaint with the Commission on Human Rights and Opportunities (CHRO) on or about June 12, 2020. The CHRO issued a release of jurisdiction on or about May 12, 2021.[2] Subsequently, on July 7, 2021, the plaintiff commenced the present action against

---

[2] "A person alleging discriminatory work practices in violation of CFEPA must exhaust his or her administrative remedies by filing a complaint with the [CHRO] in accordance with General Statutes § 46a-82. Only after obtaining a release of jurisdiction from the CHRO may that person pursue a civil action in the Superior Court." *Eldridge*

the defendant by way of a three count complaint alleging that the defendant had (1) discriminated against him by terminating his employment because of his disabilities, namely, his sleep apnea,[3] stress, and anxiety, (2) failed to provide him a reasonable accommodation in the form of a leave of absence, and (3) retaliated against him for requesting a reasonable accommodation in violation of General Statutes § 46a-60 (b) (1).[4]

On April 12, 2024, the defendant filed a motion for summary judgment accompanied by a memorandum of law and supporting documentation. The defendant claimed that it was entitled to summary judgment on all three counts of the plaintiff's complaint because there were no genuine issues of material fact that (1) the plaintiff could not perform the essential functions of his position with or without a reasonable accommodation and that the defendant had terminated his employment for a legitimate business reason, which was not a pretext for discrimination; (2) the plaintiff failed to request an accommodation and had received all of the paid disability benefits he requested; and (3) the plaintiff did not engage in a protected activity, and the defendant had a legitimate, nondiscriminatory reason for terminating

v. *Hospital of Central Connecticut*, 230 Conn. App. 666, 668–69 n.2, 330 A.3d 604 (2025).

[3] See footnote 1 of this opinion.

[4] General Statutes § 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (1) [f]or an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability, physical disability, including, but not limited to, blindness, status as a veteran or status as a victim of domestic violence . . . ."

Although § 46a-60 (b) (1) has been amended since the time of the allegedly discriminatory conduct in this case; see Public Acts 2022, No. 22-82, § 10; Public Acts 2021, No. 21-69, § 1; those amendments are not relevant to this appeal. We therefore refer in this opinion to the current revision of § 46a-60 (b) (1).

his employment, which the plaintiff could not show was pretextual. Attached to its memorandum of law were affidavits, excerpts from the transcripts of the depositions of the plaintiff, Moffett, Troiano, and Patricia DeAngelis, an employee benefits specialist with the defendant, and other documentary evidence.

On July 29, 2024, the plaintiff filed an objection to the defendant's motion for summary judgment, contending, in his memorandum of law in opposition, that the defendant was not entitled to summary judgment on any of the plaintiff's claims because there existed genuine issues of material fact with respect to all of the issues raised in the defendant's motion. The plaintiff's objection and memorandum in opposition to the motion for summary judgment included attached excerpts of the transcripts from the sworn depositions of the plaintiff, DeAngelis, Moffett, and Troiano, and additional documentary evidence.

The court, *Chadwick, J.*, heard argument from the parties on October 21, 2024. On November 29, 2024, the court issued a memorandum of decision in which it granted the defendant's motion on the ground that the plaintiff had failed to establish that there were genuine issues of material fact concerning any of his claims and that the defendant therefore was entitled to judgment as a matter of law.

With respect to the disability discrimination claim set forth in count one of the plaintiff's complaint, the trial court concluded that the plaintiff had failed to produce evidence sufficient to create a genuine issue of material fact with respect to each of the elements of a prima facie case. Specifically, the court determined that there was no genuine issue of material fact "as to whether a reasonable accommodation existed that would qualify the plaintiff to perform his job" because, although the plaintiff had suggested that he would have been able to return to work after receiving an accommodation in the form of a leave of absence, the plaintiff "left on long-term disability without providing the defendant company any insight

into his projected length of recovery or completing the defendant's formal leave of absence procedure, even after being informed of the need to apply."

The trial court next concluded that the defendant was entitled to summary judgment on the plaintiff's failure to accommodate claim because the plaintiff presented no evidence in support of his claim that he had requested a leave of absence as a reasonable accommodation, and the defendant therefore could not be liable for having failed to accommodate a request that the plaintiff never made.

Lastly, with respect to the plaintiff's retaliation claim, the trial court concluded that the plaintiff had failed to demonstrate that there was a genuine issue of material fact concerning whether his employment was terminated because he had engaged in the protected activity of seeking a reasonable accommodation. The court determined that the plaintiff had produced "no evidence" supporting his claim that he had "requested a reasonable accommodation . . . ." As a result, the court concluded that the plaintiff had failed to establish a prima facie case of retaliation. Accordingly, the court rendered summary judgment for the defendant on all three claims. This appeal followed. Additional facts will be set forth as necessary.

"We begin by setting forth the relevant standard of review and legal principles that govern our analysis. The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . [and] the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When documents submitted in support of a motion for summary judgment fail

to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendants' motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Castelino* v. *Whitman, Breed, Abbott & Morgan, LLC*, 233 Conn. App. 467, 477, 342 A.3d 245, cert. denied, 353 Conn. 914, 344 A.3d 155 (2025).

"Under [CFEPA] . . . employers may not discriminate against certain protected classes of individuals, including those who are physically disabled." *Desrosiers* v. *Diageo North America, Inc.*, 314 Conn. 773, 775, 105 A.3d 103 (2014). Section 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (1) [f]or an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . present or past . . . physical disability . . . ." "[W]e review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes." *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 415, 944 A.2d 925 (2008).

I

The plaintiff first claims that the trial court erred in rendering summary judgment on his disability discrimination claim because a genuine issue of material fact existed with respect to whether the plaintiff was

qualified to perform the essential functions of his job at the time of his termination, with the reasonable accommodation of a leave of absence.[5] We disagree.

"The standard applicable to the plaintiff's claim of disability discrimination . . . is the *McDonnell Douglas-Burdine*[6] model of analysis. . . . Under this framework, the plaintiff first must establish a prima facie case, then the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for its employment decision. . . . Once the defendant offers a legitimate, nondiscriminatory reason, then the plaintiff has the burden to prove by a preponderance of the evidence that the proffered reason is pretextual." (Footnote in original; internal quotation marks omitted.) *Castelino* v. *Whitman, Breed, Abbott & Morgan, LLC*, supra, 233 Conn. App. 478; see also *Eldridge* v. *Hospital of Central Connecticut*, 230 Conn. App. 666, 673, 330 A.3d 604 (2025) (concluding that pretext model of analysis set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (*McDonnell Douglas*), was appropriate standard for evaluating disability discrimination claim because "[t]he

---

[5] The plaintiff also claims, inter alia, that his employment was terminated because of his disability and that the defendant's "policy and practice of automatically terminating employees as a result of long-term disability benefits is per se discriminatory . . . ." Because we agree with the trial court that the plaintiff has not demonstrated the existence of a genuine issue of material fact concerning whether he was qualified to perform the essential functions of his position with or without a reasonable accommodation at the time of his termination, we need not address the plaintiff's additional claims regarding the other elements of his disability discrimination claim. See, e.g., *Lassen* v. *Hartford*, 223 Conn. App. 285, 291 n.6, 308 A.3d 564 (2024) ("[s]ummary judgment is appropriate where no genuine issue of material fact exists . . . with respect to any one element that the plaintiff is required to prove in order to prevail at trial" (internal quotation marks omitted)).

[6] See *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 256–58, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (clarifying that burden placed on defendant in burden shifting framework as set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), is one of production, not persuasion).

defendant articulated . . . nondiscriminatory bases for its termination of the plaintiff's employment").

"In order to establish a prima facie case of employment discrimination based on adverse employment action under the burden shifting analysis enumerated by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, [supra, 411 U.S. 802], and adopted by [our Supreme Court] in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990) . . . the complainant must prove that: (1) [he] [was] in the protected class; (2) [he] was qualified for the position; (3) [he] suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination." (Internal quotation marks omitted.) *Eldridge* v. *Hospital of Central Connecticut*, supra, 230 Conn. App. 671–72. "To be a qualified individual with a disability, a plaintiff must be able to perform the essential functions of his job, with or without a reasonable accommodation, *at the time of the adverse employment decision*." (Emphasis in original; internal quotation marks omitted.) *Stubbs* v. *ICare Management, LLC*, 198 Conn. App. 511, 525, 233 A.3d 1170 (2020).

"Both this court and numerous federal courts have recognized that attendance at work is a necessary job function. An employee who is unable to come to work on a regular basis [is] unable to satisfy any of the functions of the job in question, much less the essential ones. . . . [Federal Circuit Courts of Appeals] have also held that regular and reliable attendance is a necessary element of most jobs." (Internal quotation marks omitted.) *Barbabosa* v. *Board of Education*, 189 Conn. App. 427, 438, 207 A.3d 122 (2019).

In the present case, the plaintiff does not claim that he was able to perform the essential functions of his job without a reasonable accommodation. Thus, to make out a prima facie case of discrimination, the plaintiff was required to prove that he was able to perform the

essential functions of his job with a reasonable accommodation at the time of his termination.

The only accommodation that the plaintiff argues is at issue in the present case is a leave of absence. "A medical leave of absence is a recognized accommodation; however, [t]he duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely . . . ." (Internal quotation marks omitted.) *Eldridge* v. *Hospital of Central Connecticut*, supra, 230 Conn. App. 676; see also *Graves* v. *Finch Pruyn & Co.* 457 F.3d 181, 186 (2d Cir. 2006) (concluding that request for leave of absence was not indefinite when plaintiff asked for " 'more time' to get a doctor's appointment and that it would take a 'couple of weeks' "); *Thomson* v. *Dept. of Social Services*, 176 Conn. App. 122, 131, 169 A.3d 256 (concluding that leave of absence request was not *reasonable* when plaintiff stated that "she would be taking leave for *over thirty days* depending on [her] lung condition," admitted in her deposition that she did not know how long she was going to be out on leave, and submitted forms from her physician stating that improvement was expected "within one to two months, and additionally stated in at least three places, that the plaintiff would be absent [until] reevaluated" without indicating date for reevaluation or return (emphasis in original; internal quotation marks omitted)), cert. denied, 327 Conn. 962, 172 A.3d 800 (2017).

Our review of the record reveals that the defendant submitted evidence in support of its summary judgment motion demonstrating that the plaintiff never requested a leave of absence at any time prior to or at the time of his termination, and that, when the plaintiff applied for and received long-term disability benefits, he did not provide the defendant with any indication of whether or when he planned to return to work. In support of its motion for summary judgment, the defendant submitted an excerpt from the plaintiff's deposition transcript

in which the plaintiff testified that he had applied for and received short-term disability benefits until those benefits were exhausted, and then applied for long-term disability but that he "didn't request accommodations" and did not utilize the leave of absence process despite acknowledging the fact that the defendant had asked him when he would return to work and provided him with information about how to apply for a leave of absence. The plaintiff's deposition transcript also reflects that, when the plaintiff was informed of his approval for long-term disability benefits on April 14, 2020, he also was informed by the defendant that, due to the approval, his employment would be terminated effective April 30, 2020. The defendant also submitted an affidavit from Moffett indicating that, while the plaintiff was receiving short-term disability benefits, Troiano and Moffett communicated with the plaintiff regarding his return to work. The defendant additionally submitted an email from Troiano to the plaintiff informing him of the steps to follow if he was interested in pursuing a leave of absence.

Despite these communications from the defendant, the plaintiff admitted during his deposition that, prior to his termination, he never communicated to the defendant his intent to return to work or provided any time period by which he would return. The plaintiff further conceded during his deposition that he was not able to return to work on April 30, 2020, the effective date of his termination.

In response to the evidence submitted by the defendant, the plaintiff provided no evidence demonstrating that he had applied for a leave of absence or provided the defendant with any indication of whether or when he would be able to return to work. Although the plaintiff argues that his application for disability benefits was itself a request for a leave of absence, the uncontradicted evidence submitted by the defendant shows that the long-term and short-term disability benefit applications were managed by third-party administrators and

that the request for a leave of absence was a different process that the plaintiff was notified about but failed to pursue.[7] The defendant also submitted its written policy for short-term and long-term disability, which indicates that the application for disability was a form of compensation for salaried employees "who want to be paid during their absence . . . ." The plaintiff himself acknowledged in his deposition "that a medical leave of absence is a separate process from short-term disability" and that he "[did not] recall going down the medical leave of absence process."

In support of its conclusion that the plaintiff failed to establish that he was able to perform the essential functions of his job with a reasonable accommodation at the time his employment was terminated, the court relied on *Thomson* v. *Dept. of Social Services*, supra, 176 Conn. App. 122. In *Thomson,* the plaintiff brought an action against her employer, alleging that the employer had failed to provide her with a reasonable accommodation in the form of a leave of absence. Id., 127. "The plaintiff informed the defendant that she would be taking a leave of absence, did not provide the defendant with any time frame for her return, and did not respond to the defendant's subsequent attempts to contact her regarding her request for leave . . . effectively ask[ing] the defendant to hold [her] position open indefinitely while [she] attempt[ed] to recover . . . ." (Internal quotation marks omitted.) Id., 132. The trial court rendered summary judgment for the defendant. This court affirmed the judgment of the trial court, concluding that the plaintiff had "failed to demonstrate that she requested a reasonable accommodation that enabled her to perform the essential functions of her job, and, therefore the [trial] court properly determined that as a matter of law the plaintiff could not meet her burden of proving a prima facie case of disability discrimination." Id., 132–33.

[7] See *Judge* v. *Landscape Forms, Inc.*, 592 Fed. Appx. 403, 408 (6th Cir. 2014) (where employer used third-party company to process short-term and long-term disability claims, employee's "request for long-term disability benefits cannot be construed as a request for an accommodation").

In the present case, the trial court concluded that the plaintiff, like the plaintiff in *Thomson*, did not "establish the second element of the prima facie case because he could not perform the essential elements of his job with or without a reasonable accommodation." The plaintiff argues that the court misapplied *Thomson* and maintains that this court's decision in *Thomson* actually supports his claim that the trial court improperly rendered summary judgment in favor of the defendant. In particular, he observes that, in *Thomson*, this court stated in a footnote that it agreed with the plaintiff's contention in that case that, for an employer to rely on the indefinite nature of a leave request as justification for not granting such an accommodation, an employer should be required to demonstrate that it engaged in an interactive process with the employee during which it explained to the employee the difficulties caused by the indefinite nature of the request and invited the employee to provide an approximate return date from a health care provider. See *Thomson* v. *Dept. of Social Services*, supra, 176 Conn. App. 132 n.1.

The plaintiff's reliance on *Thomson* is misplaced. Although this court agreed with the plaintiff's contention in that case that an employer must at least attempt to engage in an interactive process with employees prior to terminating their employment on the basis of a request for leave for an indefinite period, the court ultimately concluded that the employer was entitled to summary judgment because the employer actually "did attempt to engage in the necessary interactive process, and the plaintiff did not respond for more than two weeks." Id. Here, the undisputed evidence demonstrates that the plaintiff never requested a leave of absence or gave the defendant any indication of whether or when he would return to work. The undisputed evidence further demonstrates that the defendant in the present case, like the employer in *Thomson*, attempted to engage in an interactive process with the plaintiff, but the plaintiff failed to communicate to the defendant whether or when he would return to work. Thus—and contrary to the

plaintiff's contention on appeal—the trial court's decision in this case is entirely consistent with this court's decision in *Thomson*.

In sum, on the basis of our review of the record, we conclude that the trial court correctly determined that there was no genuine issue of material fact that the plaintiff was not qualified for the position with or without a reasonable accommodation at the time his employment was terminated. As a result, the plaintiff failed to establish a prima facie case of disability discrimination. See, e.g., *Tomick* v. *United Parcel Service, Inc.*, 135 Conn. App. 589, 611 n.15, 43 A.3d 722 ("[t]o be a qualified individual with a disability, a plaintiff must be able to perform the essential functions of his job, with or without a reasonable accommodation, at the time of the adverse employment decision"), cert. denied, 305 Conn. 920, 47 A.3d 389 (2012), and cert. denied, 305 Conn. 920, 47 A.3d 389 (2012); *Thomson* v. *Dept. of Social Services*, supra, 176 Conn. App. 132–33 (request for medical leave of absence was not reasonable accommodation when time period for return was not specified, and, thus, plaintiff could not show she was qualified for position in that she could perform essential functions of position with or without reasonable accommodation). Accordingly, we conclude that the court properly rendered summary judgment in favor of the defendant on the plaintiff's disability discrimination claim.

## II

The plaintiff next claims that the trial court erred in rendering summary judgment for the defendant on his failure to accommodate claim because it incorrectly concluded that there was no genuine issue of material fact with respect to his failure to request a reasonable accommodation in the form of a medical leave of absence. We disagree.

"In order to survive a motion for summary judgment on a reasonable accommodation claim, the plaintiff must produce enough evidence for a reasonable jury to find

that **(1)** he is disabled within the meaning of the **[**statute**]**, **(2)** he was able to perform the essential functions of the job with or without a reasonable accommodation, and **(3) [**the defendant**]**, despite knowing of **[**the plaintiff's**]** disability, did not reasonably accommodate it. . . . If the employee has made such a prima facie showing, the burden shifts to the employer to show that such an accommodation would impose an undue hardship on its business." **(**Citations omitted; internal quotation marks omitted.**)** *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 415–16.

"Once a disabled individual has suggested to his employer a reasonable accommodation, federal law requires, and we agree, that the employer and the employee engage in an informal, interactive process with the qualified individual with a disability in need of the accommodation . . . **[**to**]** identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. . . . In this effort, the employee must come forward with some suggestion of accommodation, and the employer must make a good faith effort to participate in that discussion." **(**Citation omitted; internal quotation marks omitted.**)** Id., 416.

The trial court in the present case concluded that there was no genuine issue of material fact "as to whether the plaintiff initiated the interactive process to request a reasonable accommodation" because "the plaintiff did not request to take a leave of absence . . . ." The same evidence that we reviewed in part I of this opinion in concluding that there was no genuine issue of material fact that the plaintiff had failed to establish a prima facie case of disability discrimination also supports the trial court's determination that the plaintiff did not establish a prima facie case as to his failure to accommodate claim. Such a claim requires a plaintiff to request a reasonable accommodation. Having failed to demonstrate that he requested any such accommodation, the plaintiff failed to make out a prima facie case of discrimination on the basis

of his claim that the defendant did not accommodate his disability. Therefore, we conclude that the court properly rendered summary judgment in favor of the defendant on the failure to accommodate claim.

### III

The plaintiff's final claim is that the trial court improperly rendered summary judgment on his retaliation claim because there are genuine issues of material fact as to whether the defendant retaliated against him for requesting a leave of absence. We disagree.

"[R]etaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas* [*Corp.*] [under which] [t]he plaintiff must first establish a prima facie case of retaliation. To establish a prima facie case of retaliation, an employee must show (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. . . . Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, [nondiscriminatory] reason existed for its action. . . . If the employer demonstrates a legitimate, nondiscriminatory reason, then [t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." (Citations omitted; internal quotation marks omitted.) *Luth* v. *OEM Controls, Inc.*, 203 Conn. App. 673, 690, 252 A.3d 406 (2021).

In its memorandum of decision, the trial court first concluded that the protected activity claimed by the plaintiff was his request for a reasonable accommodation. The court then concluded that the plaintiff could not establish a prima facie case of retaliation because there was "no evidence to establish that the plaintiff . . . requested a reasonable accommodation . . . ."

The only protected activity alleged by the plaintiff on appeal is his purported request for a reasonable accommodation in the form of a leave of absence. We already have concluded in part II of this opinion, however, that the plaintiff failed to establish that there was a genuine issue of material fact concerning whether he had requested a leave of absence as a reasonable accommodation. Having failed to do so, the plaintiff also has failed to establish that there is a genuine issue of material fact concerning whether he had engaged in a protected activity. Thus—and consistent with our analysis in parts I and II of this opinion—we conclude that the trial court properly rendered summary judgment in favor of the defendant on the plaintiff's retaliation claim because he failed to make out a prima facie case of retaliatory discrimination.

The judgment is affirmed.

In this opinion the other judges concurred.